## BALLESTER–RIPOLL v. COURT OF TAX APPEALS OF PUERTO RICO et al.

### No. 3918.

Circuit Court of Appeals, First Circuit.

April 5, 1944.

William Cattron Rigby, of Washington, D. C. (Oscar Souffront, of Mayaguez, P. R., and J. J. Ortiz-Alibran, of San Juan, P. R. (Rigby, Leon & Weill and Fred W. Llewellyn, all of Washington, D. C., of counsel), for appellant.

I. Henry Kutz, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

On March 15, 1941, the taxpayer and his wife filed separate income tax returns for the year 1940. Each reported a net income of $19,529.45, that amount being one-half of the income received from the same source, namely: salary from a partnership, directors fees from a partnership, directors fees from a corporation, interest on notes payable by a partnership, profits from an interest in a partnership and corporate dividends, all of which was community property: On August 18, 1941, the Treasurer reliquidated the taxpayer's return pursuant to Acts Nos. 31 and 159 of the Laws of Puerto Rico, 1941, consolidated it with that of his wife and eliminated certain exemptions and credits. The Treasurer notified the taxpayer that he would be required to pay on the combined net income of $39,058.90 an additional tax of $5,661.71, making a total of $6,507.49 for the year 1940. On October 1, 1941, the taxpayer filed a complaint in the Court of

Tax Appeals alleging that the levying of such tax was void because the procedure was not in accordance with that authorized in Sections 56 and 57 of Act 74 of August 6, 1925, as amended. On May 27, 1942, the Court of Tax Appeals decided that it was without jurisdiction to entertain the case but on certiorari the Supreme Court of Puerto Rico reversed the order of the Court of Tax Appeals and held that the latter court had jurisdiction and remanded the case for further proceedings. The Court of Tax Appeals decided the case on its merits against the taxpayer and upheld the tax imposed by the Treasurer. This is an appeal from the decision of the Supreme Court of Puerto Rico affirming in part the decision of the Court of Tax Appeals. The statutes are copied in the margin.[1]

[1] Organic Act of Puerto Rico (Act of March 2, 1917), c. 145, 39 Stat. 951, as amended by the Act of May 17, 1932, c. 190, 47 Stat. 158, 48 U.S.C.A. § 737:

"Sec. 2. That no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws.

*     *     *     *     *

"That the rule of taxation in Porto Rico shall be uniform."

*     *     *     *     *

Laws of Puerto Rico (1925):

Act No. 74, approved August 6, 1925.

"Section 4.—(a) The term 'dividend' when used in this title (except when used in paragraph (9) of subdivision (a) of section 32 and paragraph (4) of subdivision (a) of section 43) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913; and the term 'profits' means any distribution made by a partnership to its members and participants out of its earnings obtained after February 28, 1913."

*     *     *     *     *

"Section 15.—For the purposes of this title, except as otherwise provided in section 31—

"(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the officers and employees of The People of Porto Rico or of any political subdivision thereof, the compensation received as such), of whatever kind and in whatever form paid, or from profession, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, partnership profits, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever; * * *."

*     *     *     *     *

"Section 18.—For the purpose of the normal tax only there shall be allowed the following credits:

"(a) The amount received as partnership profits or dividends (1) from a domestic corporation * * *."

*     *     *     *     *

"Section 24.—(a) The following individuals shall each make under oath a return stating specifically the items of his gross income and the deductions and credits allowed under this title—

*     *     *     *     *

"(b) If a husband and wife living together have an aggregate net income for the taxable year of $2,500, or over, or an aggregate gross income for such year of $5,000 or over—

"(1) Each shall make such a return, or

"(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income."

*     *     *     *     *

Laws of Puerto Rico (1941):

Act No. 31, approved April 12, 1941.

Section 1.—Paragraphs (2) and (3) of sub-division (a) of Section 2 of Act No. 74, entitled "An Act to provide revenues for The People of Porto Rico through the levying of certain income taxes, and for other purposes, approved August 6, 1925, as amended by Act No. 18, of June 3, 1927; Act No. 30, of April 26, 1932; Act No. 102, of May 14, 1936; Act No. 74, of May 9, 1937 and Act No. 2, of May 25, 1939, are hereby amended as follows:

*     *     *     *     *

"Section 2.—

"(a)—(3)—The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

Section 2.—Subdivision (a) of Section 3 of said Act is hereby amended as follows:

"Section 3.—(a) The term 'taxable year' means the calendar year, or the fiscal year ending during each calendar

Section 13 of Act No. 31, Laws of Puerto Rico, 1941, provides that a husband and wife living together must file a single joint return of their income and imposes a tax on the aggregate income. Prior to the amendment the husband and wife living together had the option of making a separate or joint return. The taxpayer contends that under the community property law of Puerto Rico the income for 1940 was owned separately by his wife and by him and that the mandatory joint return prescribed by the income tax act deprived him of property without due process of law in that it taxed him on income belonging to another person, his wife.

year, upon the basis of which the net income is computed under Sections 14 or 30. The term 'fiscal year' shall mean an accounting period of twelve (12) months ending on the last day of any month other than December. The term 'taxable year' includes, in the case of a return made for a fraction of a year under the provisions of this title or under regulations prescribed by the Treasurer, the period for which such return has been made. The first taxable year, for the purpose of this Act, shall be the calendar year 1940, or any fiscal year ending during the calendar year 1940."

Section 3.—Subdivision (a) of Section 4 of said Act is hereby amended as follows:

"Section 4.—(a) The term 'dividend' when used in this title, except when used in paragraph (8) of subdivision (a) of section 32 and paragraph (3) of subdivision (a) of Section 43 shall mean any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913, or out of the returns, earnings or profits obtained during the taxable year, computed at the close of the taxable year without making any deductions for any distribution made during the taxable year, regardless of what the amount of the earnings, returns, or profits might have been or where at the time the distribution was made. The term 'earnings' shall mean any share or right to share in a partnership, which belongs to its partners or participants in each taxable year out of the earnings or profits of any partnership."

\*  \*  \*  \*  \*

Section 5.—Subdivision (a) of section 12 of said Act is hereby amended to read as follows:

"Section 12.—(a) There shall be levied, collected and paid for each taxable year on the net income of every citizen of Puerto Rico a normal tax of eight (8) per cent of the amount of the net income in excess of the credits provided in Section 18; except that in the case of residents of Puerto Rico the rate on the first three thousand (3,000) dollars of said amount in excess shall be three (3) per cent, and on the following two thou-

sand (2,000) dollars of said amount in excess, the rate shall be five (5) per cent, and on the following two thousand (2,000) dollars of said amount in excess, or, that is; $5,000 to $7,000, the rate shall be seven (7) per cent; Provided, That said normal tax may also be assessed and collected on the income received by shareholders for dividends; Provided, further, That on the income of every person not a resident of Puerto Rico who is not a citizen of Puerto Rico there shall be levied, collected, and paid for each taxable year, a normal tax of ten (10) per cent on the amount of the net income, and there shall be levied, in addition, the surtax fixed by Section 13."

Section 6.—Subdivision (a) of Section 13 of said Act is hereby amended as follows:

"Section 13.—(a) In addition to the normal tax imposed by Section 12 of this Act, there shall be levied, collected, and paid for each taxable year on the net income of every individual a surtax as follows:

"On a net income of up to $7,000, inclusive, there shall be no surtax; on larger incomes in excess of $7,000 and not in excess of $10,000, three (3) per cent on such excess.

"$90 on net incomes of $10,000; and on net incomes in excess of $10,000 and not in excess of $14,000, five (5) per cent additional on such excess.

"$290 on net incomes of $14,000; and on net incomes in excess of $14,000 and not in excess of $16,000, seven (7) per cent additional on such excess.

"$430 on net incomes of $16,000; and on net incomes in excess of $16,000 and not in excess of $18,000, nine (9) per cent additional on such excess.

"$610 on net incomes of $18,000; and on net incomes in excess of $18,000 and not in excess of $20,000, ten (10) per cent additional on such excess.

"$810 on net incomes of $20,000; and on net incomes in excess of $20,000 and not in excess of $22,000, eleven (11) per cent additional on such excess.

"$1,030 on net incomes of $22,000; and on net incomes in excess of $22,000 and not in excess of $24,000, twelve (12) per cent additional on such excess.

In the first important case involving the taxability of income from community property, United States v. Robbins, 1926, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, the Supreme Court held that, since under the then existing California law a wife had a mere expectancy in the community property and not a vested interest, the husband was taxable on all of the community property income. The court also enunciated a second ground of decision, namely, that even if the wife's interest were vested the husband's control over the community funds would be enough to subject him to taxation for the entire community income. This second ground of decision was aban-

"$1,270 on net incomes of $24,000; and on net incomes in excess of $24,000 and not in excess of $26,000, thirteen (13) per cent additional on such excess.

"$1,530 on net incomes of $26,000; and on net incomes in excess of $26,000 and not in excess of $28,000, fourteen (14) per cent additional on such excess.

"$1,810 on net incomes of $28,000; and on net incomes in excess of $28,000 and not in excess of $30,000, fifteen (15) per cent additional on such excess.

"$2,110 on net incomes of $30,000; and on net incomes in excess of $30,000 and not in excess of $34,000, sixteen and one-half (16½) per cent additional on such excess.

"$2,770 on net incomes of $34,000; and on net incomes in excess of $34,000 and not in excess of $36,000, seventeen and one-half (17½) per cent additional on such excess."

\*       \*       \*       \*       \*

Section 10.—Section 18 of said Act is hereby amended to read as follows:

"Section 18.—For the purpose of the normal tax, there shall be allowed only the following credits:

\*       \*       \*       \*       \*

(Subdivision (a) of Section 18 of Act No. 74, approved August 6, 1925, supra, is omitted in this amendment.)

\*       \*       \*       \*       \*

Section 13. Subdivisions (a) and (b) of Section 24 of said Act, are hereby amended to read as follows:

"Section 24.—(a) The following individuals shall each make under oath a return stating specifically the items of his gross income and the deductions and credits allowed under this title—

\*       \*       \*       \*       \*

"(b) If a husband and wife living together have a net income for the taxable year of $2,000, or over, or an aggregate gross income for such year of $5,000 or over, the total income of both shall be included in a single joint return, and the normal and additional tax shall be computed on the aggregate income. The net or gross income received by any one of the spouses shall not be divided between them."

\*       \*       \*       \*       \*

Section 26.—Every person required to make a return in accordance with the provisions of this Act, as amended, and every person who, for any reason, may have failed to make his return on March 15, 1941, in spite of the fact that he was so required under the Act in force on that date, may make his return within the thirty (30) days following the effective date of this Act and pay the tax corresponding to the taxable year of 1940, and, upon so doing, he shall not incur the penalties prescribed in the first paragraph of subdivision (2) of Section 77 of this Act.

Section 27.—If any provision of this Act, or the application thereof to any person or circumstance, is held to be invalid, the remainder of the Act and the application of said provision to other persons or circumstances shall not be affected.

Section 28.—All laws or parts of laws in conflict herewith are hereby repealed.

Section 29.—It is hereby declared that there exists a necessity and an emergency for the retroactivity of this Act, and the same shall take effect ninety days after its approval, which shall take effect from and after January 1, 1940.

Laws of Puerto Rico (1941):

Act No. 159, approved May 13, 1941.

Section 1.—Section 12 of Act No. 74, entitled "An Act to provide revenues for The People of Porto Rico through the levying of certain income taxes, and for other purposes," approved August 6, 1925, as subsequently amended, is hereby drafted as follows:

"Section 12.—(a) There shall be levied, collected and paid for each taxable year on the net income of every person a resident of Puerto Rico a normal tax of eight (8) per cent of the amount of the net income in excess of the credits provided in Section 18; except that in the case of American citizens, residents of Puerto Rico, the rate on the first three thousand (3,000) dollars of said amount in excess shall be three (3) per cent, and on the following two thousand (2,000) dollars of said amount in excess, the rate shall be five (5) per cent, and on the following two thousand (2,000) dollars of said amount in excess, or, that is; $5,000 to $7,000, the rate shall be seven (7) per cent; Provided, That said normal tax may also be assessed and

doned, however, in Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, where it was held that since a wife had a present vested interest in community property equal to that of her husband under the local law of the State of Washington, she was entitled to treat one-half the income as her own and file a separate return for it.

Thus, as the law stands on these cases, ownership of a present vested interest equal to that of her husband is the sole test of whether a wife may report one-half of the community property income. The fact that the husband has "sweeping powers of management" and control are of no significance, but if, as was the fact in California at the time of United States v. Robbins, supra, a wife does not have a present vested interest in the community property, the entire income from community property is that of the husband and must be reported by him in a single return.

The Supreme Court of Puerto Rico in the opinion below held that the wife's interest in community property is not vested. It quoted its opinion in National City Bank v. De la Torre, 54 P.R.R. 219, 223, 224, to the effect that "the interest of the wife in the conjugal partnership while it exists is a mere expectancy or hope to receive one moiety of the liquid assets that might exist when the partnership is dissolved." Recognizing that in the rehearing in the De la Torre case it had said "we do not doubt in reality, that the interest of the wife is something more than a mere expectancy * * *" (54 P.R.R. 651, 654, 655), it

---

collected on the income received by shareholders for dividends; Provided, further, That on the income of every person not a resident of Puerto Rico who is not a citizen of Puerto Rico there shall be levied, collected, and paid for each taxable year, a normal tax of ten (10) per cent on the amount of the net income, except that in the case of nonresidents who are American citizens the normal tax shall be eight (8) per cent on the net income, and there shall be levied, in addition, the surtax fixed by Section 13."

*      *      *      *      *

Section 6.—If any provision of this Act or the application thereof to any person or circumstance is declared void, the rest of the Act, and the application of said provision to other persons or circumstances, shall not be affected.

Section 7.—All laws or parts of laws in conflict herewith are hereby repealed.

Section 8.—It is hereby declared that there exists a necessity and an emergency for the retroactivity of this Act, and the same shall take effect ninety days after its approval, which shall take effect from and after January 1, 1940.

Laws of Puerto Rico, First Special Session (1941):

Act No. 23, approved November 21, 1941.

Section 1.—Subdivision (a) of Section 3 of Act No. 74, entitled "An Act to provide revenues for The People of Porto Rico through the levying of certain income taxes, and for other purposes," approved August 6, 1925, as amended by Act No. 18 of June 3, 1927, Act No. 30 of April 26, 1932, Act No. 102 of May 14, 1936, Act No. 74 of May 9, 1937, Act No. 2 of May 25, 1939, Act No. 31 of April 12, 1941, and Act No. 159 of May 13, 1941, is hereby amended as follows:

"Section 3—(a) The term 'taxable year' means the calendar year, or the fiscal year ending during each calendar year, upon the basis of which the net income is computed under Sections 14 or 30. The term 'fiscal year' shall mean an accounting period of twelve (12) months ending on the last day of any month other than December. The term 'taxable year' includes, in the case of a return made for a fraction of a year under the provisions of this title or under regulations prescribed by the Treasurer, the period for which such return has been made. The first taxable year, for the purposes of this Act, shall be the calendar year 1941, or any fiscal year ending during the calendar year 1941."

*      *      *      *      *

Section 11.—It is hereby declared that there exist a necessity and emergency for the retroactivity of this Act, and it shall take effect ninety (90) days after its approval which shall take effect from and after January 1, 1941.

*      *      *      *      *

Laws of Puerto Rico (1941):

Act No. 172, Approved May 13, 1941.

Section 4.—The court shall have jurisdiction to revise the assessment and reassessment of personal and real property and shall take cognizance of all claims which may be brought before it by interested parties, against the decisions of the Treasurer of Puerto Rico which may affect the payment of property taxes, income taxes, and inheritance taxes. This jurisdiction, however, cannot be pleaded before the court by any person until there has been an administrative decision in the matter on the part of the Treasurer of Puerto Rico, according to law.

said below, "It is not necessary for us in a taxation case of this sort to go further than to say that the wife during coverture does not have a vested right * * * saying that 'the interest of the wife is something more than a mere expectancy' does not go so far as to call the wife's interest a vested one, and that is the only question before us at this time." As we noted in commenting on the statement of the Supreme Court of Puerto Rico in its original opinion in the De la Torre case that "the interest of the wife * * * is a mere expectancy", "there is no doubt that this concept of the nature of the wife's interest has been in vogue among civil law commentators. See the review by White, C. J., in Garrozi v. Dastas, 204 U.S. 64, 78-83, 27 S.Ct. 224, 51 L.Ed. 369; McKay, Community Property, 2d Ed., §§ 1096–1108. General expressions, cited by the court below, from the texts of the Spanish commentators Manresa and Scaevola look the same way. 9 Manresa, Commentarios al Código Civil Español, 4th Ed. 1930, pp. 571, 579. 22 Scaevola, Código Civil, page 236." De la Torre v. National City Bank of New York, 1 Cir., 1940, 110 F.2d 976, 978, certiorari denied 311 U.S. 666, 61 S.Ct. 24, 85 L.Ed. 428.

We may reverse a judgment of the Supreme Court of Puerto Rico on a question of local law only if that judgment is "inescapably wrong". Puerto Rico v. Rubert Hermanos Co., 1942, 315 U.S. 637, 62 S.Ct. 771, 86 L.Ed. 1081; Bonet v. Texas Co., 1940, 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401; Sancho Bonet v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 307 U.S. 613, 59 S.Ct. 626, 83 L.Ed. 946. Since this is a matter of local law, United States v. Robbins, supra; De la Torre v. National City Bank of New York, supra, we need go no further than to say that the judgment below is not inescapably wrong.

The taxpayer urges that Casal v. Sancho, 53 P.R.R. 609 is inconsistent with the opinion below. Although that case quoted some text book language contrary to the opinion now before us, the court properly pointed out that the actual decision in that case was not contrary. Furthermore, as indicated in Waialua Agr. Co. v. Christian, 1938, 305 U.S. 91, 109, 59 S.Ct. 21, 83 L.Ed. 60, on these questions of local law the territorial courts have the broad powers of other appellate courts to overrule or narrow their own prior decisions. Since the wife did not have a vested interest in the community income, there was nothing to prevent the Legislature of Puerto Rico from requiring the husband to report the entire community income in one return.

The taxpayer contends that the decision below is in conflict with Hoeper v. Tax Commission of Wisconsin, 1931, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346. There a Wisconsin income tax statute which computed in the husband's income the separate income of his wife, although under the laws of that state he had no interest in or control over the property or income of his wife, was held violative of due process since it taxed one person for the property of another. Contrary to the taxpayer's assertion, the Puerto Rican Court was careful to point out that the major ground of its decision was not in conflict with the Hoeper case and it was quite right in doing so. Since under Puerto Rican community property law the income was that of the husband, there is nothing in Hoeper v. Tax Comm. of Wisconsin which would require that the husband and wife be allowed to split this income between them for tax purposes. On the facts of the case at bar that is as far as the decision need go. It is true that the Supreme Court of Puerto Rico also indicated that it felt that the Hoeper case was no longer sound law but it clearly indicated that those statements were no part of its actual decision. That court said:

"We need go no further than to say that nothing has been called to our attention which would require us under our Code to classify any of the items contained in the return involved herein as other than community income. To provide for a joint return under those circumstances is merely to bring income tax law in line with our traditional community property concepts. Only if there were an affirmative showing that one of the spouses had received some separate income in the traditional and technical sense would we be squarely presented with the problem of determining whether there was any validity left in Hoeper v. Tax Comm. of Wisconsin as a controlling authority. Whether the government could argue in that situation that provision for a single joint return was valid on the basis of taxation of husband and wife living together as a single economic unit, we are not called on to decide in this case."

The taxpayer also contends that the progressive rates embodied in the Act are in conflict with the requirement of § 2 of the Organic Act that "the rule of taxation in Porto Rico shall be uniform." It is settled that the analogous constitutional provision that "all Duties, Imposts [or] Excises shall be uniform throughout the United States" (art. 1, § 8) requires only geographical uniformity. Knowlton v. Moore, 1900, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. Although it is true that the decision therein was based in part on the words "throughout the United States" which do not appear in the similar provision in the Organic Act, that was merely one ground for the decision. The Supreme Court said, page 92 of 178 U.S., page 767 of 20 S.Ct., 44 L.Ed. 969:

"But one of the most satisfactory answers to the argument that the uniformity required by the Constitution is the same as the equal and uniform clauses which has since been embodied in so many of the state constitutions, results from a review of the practice under the Constitution from the beginning. From the very first Congress down to the present date, in laying duties, imposts, and excises the rule of inherent uniformity, or, in other words, intrinsically equal and uniform taxes, has been disregarded, and the principle of geographical uniformity consistently enforced."

When Congress came to enact the section entitled "Bill of Rights" of the Organic Act of Puerto Rico, as in the similar section of the Philippine Organic Act, it incorporated the Bill of Rights of our Constitution with little alteration. It is reasonable to suppose that when Congress carried over the requirement of uniformity in taxation from the Constitution into the Organic Act of Puerto Rico, it intended the same meaning for the term that it had always attributed to it in the passing of legislation for continental United States and that had been applied in the courts.

As the Supreme Court said in discussing another provision in the corresponding Bill of Rights for the Philippine Islands:

"How can it be successfully maintained that these expressions of fundamental rights, which have been the subject of frequent adjudications in the courts of this country, and the maintenance of which has been ever deemed essential to our government, could be used by Congress in any other sense than that which has been placed upon them in construing the instrument from which they were taken?

"It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body." Kepner v. United States, 1904, 195 U.S. 100, 124, 24 S.Ct. 797, 802, 49 L.Ed. 114, 1 Ann.Cas. 655.

The guarantees which Congress has extended to Puerto Rico are to be interpreted as meaning what like provisions meant at the time when Congress made them applicable to Puerto Rico. Cf. Serra v. Mortiga, 1907, 204 U.S. 470, 474, 27 S.Ct. 343, 51 L.Ed. 571.

So long as the classifications made by the Legislature of Puerto Rico are not arbitrary, they are not violative of the uniformity requirement of the Organic Act. Cf. San Juan Trading Co. v. Sancho, 1 Cir., 1940, 114 F.2d 969, certiorari denied 312 U.S. 702, 61 S.Ct. 805, 85 L.Ed. 1136; Gallardo v. Porto Rico Ry. Light & Power Co., 1 Cir., 1927, 18 F.2d 918. The case of Domenech v. Havemeyer, 1 Cir., 1931, 49 F.2d 849, 852, contains a clear intimation by this court that a graduated tax such as the one here imposed would not be violative of the uniformity requirement. The objectionable feature to the graduated tax there involved was that "a very slight difference in the net income of the taxpayer would result in a substantial increase in the rate of taxation to which the bulk of his income would be subject. The higher rate (surtax) is not limited, in its incidence, to the amount in excess of the percentage at which the higher rate begins, as in the federal tax law. Compare Act of October 3, 1917, § 2 (40 Stat. 300, 301), and Revenue Act of 1918, § 211(a), 40 Stat. 1062."

No appeal has been taken on behalf of Puerto Rico from the decision below holding invalid the imposition of a higher rate of taxation on the income of resident aliens than on the income of resident citizens. Section 1, Act No. 159, Laws of 1941, amending Section 12(a) of the Income Tax Act. The court held that this invalidity did not free the taxpayer of the obligation to pay the same rate as that required of resident citizens. At the time the tax here in question was imposed,

the taxpayer was a citizen of Spain and resident in Puerto Rico. The taxpayer appeals on the ground that the void provision is inseparable from the valid and nullifies the entire normal tax. The Supreme Court of Puerto Rico is entitled to the same degree of finality in its construction of a local tax statute as in any other question of local law. As the Supreme Court said in Sancho Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 510, 307 U.S. 613, 59 S.Ct. 626, 629, 83 L.Ed. 946:

"Taxing acts of Porto Rico are purely local and the traditional reluctance of this Court to overturn constructions of such local statutes by local courts is particularly applicable to interpretations of Porto Rican statutes by Porto Rican tribunals. Orderly development of the government of Porto Rico as an integral part of our governmental system is well served by a careful and consistent adherence to the legislative and judicial policy of deferring to the local procedure and tribunals of the Island."

Although with the invalid part separated the statute does not make good grammatical form it is obvious that the construction by the court below is what the Legislature would have intended had it foreseen the invalidity. Quite contrary to the situation in Spraigue v. Thompson, 1886, 118 U.S. 90, 91, 6 S.Ct. 988, 30 L.Ed. 115, relied upon by the taxpayer, the separation of the invalid clause here does not cause "the act to enact what the legislature never intended." "The plaintiff is not entitled to complete freedom from taxation because the Legislature attempted to subject it to discrimination. * * * All that the plaintiff is entitled to is to be taxed at no higher rate than are those in like circumstances." San Juan Trading Co. v. Sancho, supra, 114 F.2d page 975, and cases cited. On the construction of a state statute part of which has been held invalid, the Supreme Court has said:

"The task of determining the intention of the state legislature in this respect, like the usual function of interpreting a state statute, rests primarily upon the state court. Its decision as to the severability of a provision is conclusive upon this Court." Dorchy v. State of Kansas, 264 U.S. 286, 290, 291, 44 S.Ct. 323, 325, 68 L.Ed. 686. While a decision of the Puerto Rican courts on this question is not conclusive on us, we may not overturn it unless it is unsupported by logic or reason. Sancho Bonet v. Yabucoa Sugar Co., supra, 306 U.S. page 510, 307 U.S. 613, 59 S.Ct. 626, 83 L.Ed. 946. Certainly the result below is well supported by logic and reason.

We find no merit in taxpayer's contention .that taxing a stockholder on corporate dividends is invalid because the corporation has already paid 'taxes on that same income. Welch v. Henry, 1938, 305 U.S. 134, 143-144, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142.[2]

The taxpayer also contends that since a partnership under section 28 of the Income Tax Act pays a tax on its net income, the members thereof cannot be constitutionally taxed on the same income when distributed to them. Again' we cannot say that the Puerto Rican Court was inescapably wrong in holding that the traditional Puerto Rican partnership or "Sociedad is a juridical person apart from the members thereof". Since that is so, it may be treated for tax purposes like a corporation. The fact that the Legislature broadened the term partnership to include other than the traditional sociedad does not aid this taxpayer since the Puerto Rican Court obviously considered the partnership here involved to be the traditional sociedad.

Acts Nos. 31 and 159 of 1941 (approved in April and May, 1941) under which this income tax was imposed were expressly provided to be retroactive to Jan-

---

[2] The Income Tax Act at all times, since its enactment in 1925, has included in "gross income", "dividends" and "partnership profits". Section 15(a), Act No. 74, Laws, 1925. However, for the purpose of normal tax only, a credit was allowed individuals in the case of these two items of income. Section 18(a), Act No. 74, Laws, 1925. Nevertheless, at all times they have remained subject to the surtax.

The 1941 amendments, whose validity in this connection is attacked, repealed this credit on the normal tax; Section 10, Act No. 31, Laws, 1941; added an affirmative provision "that said normal tax may also be assessed and collected on the income received by shareholders for dividends", Sec. 5, Act No. 31, Laws, 1941, and broadened to some extent the definitions of "partnership", Section 1, Act No. 31, Laws, 1941, amending Section 2(a), Act No. 74, Laws, 1925, and earnings of partnerships. Section 3, Act No. 31, Laws, 1941, amending Section 4(a), Act No. 74, Laws, 1925.

uary 1, 1940, and to apply to the calendar year 1940, the year for which they are here imposed.[3] While this case was pending the Legislature enacted Act No. 23 of the First Special Session of 1941 (approved November 21, 1941). It is the taxpayer's contention that Sections 1 and 11 of Act No. 23 in effect repealed the provisions of Acts Nos. 31 and 159 of April and May, 1941, which made them retroactive for the year 1940, and instead caused them to be effective only commencing with January 1, 1941. The court below held: "we are unable to follow the petitioner in his contention that the effective date of Act No. 23—January 1, 1941—completely supersedes the effective date fixed in Acts Nos. 31 and 159—January 1, 1940—for the latter Acts."

The construction by the Puerto Rican Court cannot be said to be "unsupported by logic or reason". Where Sections 1 and 11 say: "The first taxable year, for the purposes of this Act, shall be the calendar year 1941 * * *" and "* * * *this Act* shall take effect from and after January 1, 1941," (italics added) the words "this Act" may well refer only to the present amending Act itself and not to the Act amended by it. No reason appears why that is not the proper interpretation. On the contrary, the use of the term in prior acts indicates that such is the meaning always adopted by the Puerto Rican Legislature. Thus, the original income tax act in 1925 reads: [4]

"The first taxable year, to be called the taxable year 1924, shall be the calendar year 1924 or any fiscal year ending during the calendar year 1924."

The first amendment to the original act in amending the quoted section among others provided: [5]

"The first taxable year, for the purposes of this Act, shall be the calendar year 1928, or any fiscal year ending during the calendar year 1928."

Subsequent amendatory acts including the one here under consideration [6] contained the same language. Obviously, the Legislature in speaking of "this Act" referred only to the amendatory act and did not include the Act being amended.

The opinion of the Puerto Rican Court that the decision of the Treasurer in this case was an "administrative decision" and hence was appealable under Section 4 of Act No. 172, Laws, 1941, was not inescapably wrong.

The court below properly held that this income tax of approximately $6500 on approximately $39,000 of net income is not objectionable as confiscation under the guise of taxation. Cf. Fox v. Standard Oil Co., 1935, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780.

The judgment of the Supreme Court of Puerto Rico is affirmed.

---

[3] Sections 2 and 29, Act No. 31, Laws, 1941; Section 8, Act No. 159, Laws, 1941.

[4] Section 3(a), Act No. 74, Laws, 1925.

[5] Section 1, Act No. 18, Laws, 1927.

[6] Section 2, Act No. 31, Laws, 1941, and Section 1, Act No. 23, Laws, 1941, First Special Session.