GABRIEL REXACH GÓMEZ, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. R-68-53.     Decided February 18, 1969.

*Rafael A. Rivera Cruz, Solicitor General,* and *Lolita Miranda, Assistant Solicitor General,* for appellant. *McConnell, Kelley & Sifre* and *Ramón Morán Loubriel* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Section 51 (a) of the Income Tax Act of 1954, 13 L.P.R.A. § 3051 (a) provides that " (1) Every individual who is single *or who is married but not living with spouse,* if having a gross income for the taxable year of over $800; and (2) Every individual who is married and living with spouse, having a gross income for the taxable year of over $2,000" shall file a return setting forth the items of gross income and the deductions and credits allowed. (Italics ours.) Complementing the above section, § 51 (b) provides that *"if a husband and wife living together* have an aggregate gross income for the taxable year of over $2,000, the total income of both shall be included in a *single joint return,* and the normal tax and surtax shall be computed on the aggregate income. *The gross income received by any one of the spouses shall not be divided between them."*[1] (Italics ours.) The constitutionality of an analagous provision as well as its retroactive application were sustained in *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460 (1943), *aff'd,* 142 F.2d 11 (1st Cir. 1944) ; *cert. denied,* 323 U.S. 723 (1944).

The appellee, Gabriel Rexach Gómez, filed income tax returns for the calendar years 1957 and 1958, in which he

---

[1] In similar terms, subdivisions (a) and (c) of § 58, 13 L.P.R.A. § 3058(a) and (c), establish the obligation of individuals to file estimated tax returns, and § 401(b), 13 L.P.R.A. § 3401(b), provides for the application of the alternative tax of Supplement T.

Until the approval of Act No. 31 of April 12, 1941 (Sess. Laws, p. 478)—effective January 1, 1940—which amended § 24 of the Income Tax Act of 1924, the filing of separate or joint returns was optional with the spouses. See § 223 of the Regulations to the Income Tax Act of 1924; and also see, *Casal* v. *Sancho, Treas.,* 53 P.R.R. 609 (1938) ; *Buscaglia, Treas.* v. *Court of Tax Appeals,* 62 P.R.R. 416 (1943) ; *Buscaglia, Treas.* v. *Tax Court,* 68 P.R.R. 719 (1948), and *Fiddler* v. *Tax Court,* 68 P.R.R. 784 (1948).

stated that he was married and lived with his wife, Rosa M. Carrasquillo. For the calendar year 1959 he also filed a return, in which he stated that he was married to the above-mentioned spouse, but was not living with, and was separated from her. In 1959, for income tax purposes, he declared the total income of the conjugal partnership derived from several sources, took all the deductions allowed and credits granted by law, and reported half of the net income as his taxable net income. Mrs. Carrasquillo did not file a return for said year. For purposes of a better understanding of the controversy between the parties, a chart illustrating the different items of adjusted gross income as they appear in the income tax returns filed by the taxpayer is set forth below.

| Taxable Year | Salaries | Dividends | Interest | Capital Gains | Others | Agricultural Losses | Adjusted Gross Income |
|---|---|---|---|---|---|---|---|
| 1957 | $36,000 | $ 9,250.00 | $16.83 | $6,218.75 | $2,000 | ($1,143.18) | $52,342.40 |
| 1958 | 36,000 | 46,003.50 | | 8,694.67 | | ( 5,961.22) | 84,736.95 |
| 1959 | 36,000 | 63,458.95 | | 6,655.10 | | (22,270.05) | 83,844.00 |

By judgment of April 4, 1960, Gabriel Rexach and Rosa M. Carrasquillo were divorced. On the same date they signed a private property settlement liquidating the conjugal partnership.

An examination of Rexach's returns resulted in the notification of deficiencies to the taxpayer. Later, the taxpayer brought court action and after a stipulation with regard to certain increases to income and availability of the deductions claimed, the controversy was limited to the determination of whether, for the year 1959, the Secretary of the Treasury had acted properly in rejecting the "deduction" of half of the net income claimed by the taxpayer as a married person not living with his spouse; and with regard to 1957 and 1958, to the availability of the refunds claimed by the taxpayer on the ground that he had included the total income

of the conjugal partnership in his returns for said years, when, as a married person not living with his spouse, he was bound to include only one half of the taxable net income of the conjugal partnership.[2]

The taxpayer prevailed. We review the judgment issued by the Superior Court to consider the basic question as to what income shall, according to § 51(a), *supra*, be included in the individual returns of separated spouses.

The Secretary of the Treasury contends that the total income must be included in Rexach's returns because (a) the evidence showed that he had the absolute control thereof and he exclusively derived the benefit of it, since Mrs. Carrasquillo did not earn a salary and, except for the payment of certain amounts for personal expenses, neither did she receive the share of one half of the rents and profits derived from the assets of the conjugal capital to which she was entitled;[3] and (b) by law, the husband is the administrator of the conjugal partnership, § 91 of the Civil Code, 31 L.P.R.A. § 284, and as the wife does not have a vested right, but only a mere expectancy or hope of sharing in the liquid assets that might result upon dissolution of the conjugal partnership, *Berrocal* v. *District Court*, 76 P.R.R. 35, 42 (1954); *National City Bank* v. *De la Torre*, 54 P.R.R. 219,

---

[2] Although in his 1957 and 1958 returns the taxpayer stated that he was married and living with his wife at the end of the tax year, in a stipulation filed by the parties in the trial court, it was stated that "In January 1957 [spouses Rexach-Carrasquillo] separated and continued living apart up to their divorce on April 4, 1960. . . ."

Regarding the effect of a divorce decree granted on the ground of separation on the determination that the spouses were separated in certain tax years, see, *Méndez* v. *Secretary of the Treasury*, 77 P.R.R. 77, 83 (1954).

[3] According to the evidence, in 1957 and 1958, from the adjusted gross income of $48,661 and $49,793, Rexach "delivered" Mrs. Carrasquillo the amounts of $7,125 and $6,821.10. He retained, therefore, $41,536 and $42,971.90. Since these amounts were not paid under a "decree for separate maintenance," § 22(k) of the Income Tax Act of 1954, 13 L.P.R.A. § 3022(k), they are not includable in the wife's gross income.

223 (1939); the total product derived from the conjugal property must be attributed to the husband. The appellee-taxpayer, on the other hand, contends that this situation is governed by the decision in *Méndez* v. *Secretary of the Treasury*, 77 P.R.R. 77, 88 (1954).

■ 1.—It is necessary to reaffirm two basic rules for a better view and understanding of the basic problem involved in this appeal. The first, appearing in *Albanese* v. *Secretary of the Treasury*, 76 P.R.R. 302 (1954), indicates that resort must be had to the Income Tax Act, and not to the Civil Code, in order to decide the problems of the spouses' tax liabilities. And the second, established in the leading case of *Ballester*, *supra* at p. 473, to the effect that the statutory provision requiring the filing of separate or joint returns does not establish "any rule of property" and that it is merely "a method of reporting and calculating taxes and neither added to nor substracted from the substantive property rights as such of the respective parties." See, *Serrallés* v. *Sec. of the Treas.*, 84 P.R.R. 10 (1961).

2.—Once these basic premises are accepted, the character of administrator of the conjugal partnership which the law confers upon the husband and the immediate control or benefit he might have exercised on, or received from, income within the family organization, lose decisive importance and meaning. Neither the one nor the other can be controlling. In truth, if we were to admit them as conclusive, it would be equivalent to rendering null in practice the application of the statutory provision authorizing separated spouses to file individual income tax returns, since it would always be necessary to attribute the total income to the husband, because of his condition of administrator of the conjugal partnership, thus in effect forcing them to file joint returns. Similar arguments could be used in the hypothesis that the decisive view would be the control or benefit derived from income unless, naturally, there was evidence to the contrary.

*Méndez* v. *Secretary of the Treasury, supra,* does not favor the position of the appellee-taxpayer. According to the facts appearing on pages 79 and 80, in an incident concerning approval of computations, there arose Mrs. Méndez Ríos' liability for deficiencies notified in connection with income tax returns filed by her former husband, Santisteban, for the years they were married, but not living together. The Secretary of the Treasury divided the amount of the deficiencies in equal parts between both spouses; the taxpayer maintained that the total liability fell on her above-mentioned husband, since the conjugal partnership had not yet been liquidated. In the course of the opinion it was stated that it was not necessary to consider the nature of the wife's right prior to the dissolution of the marital ties, whether it be considered as a vested right, a contingent right, or a mere expectation. On page 87 it was added that:

"Where each spouse has the obligation to file a separate return, it must be assumed that *the incomes* will be distributed share and share alike. Precisely, when there existed in Puerto Rico, prior to 1940, and where there still exists in other jurisdictions having the community property system, the optional right to file separate returns, each spouse had to declare in his individual return one half of the *income\** of the conjugal partnership. [Citations.]" (Italics ours.)

Note carefully, however, that the foregoing pronouncement refers to *profits,* but that does not mean that the *income,* regardless of its origin, must be equally distributed between the spouses. Any doubt is dispelled when we consider that the items involved in *Méndez,* as adjustments to net income, were increases to gross income resulting from profits obtained in the condemnation and sale of real property which belonged to the conjugal partnership.[4]

---

[4] Because it does not appear from the facts stated in the opinion issued in *Méndez, supra,* we point out that an examination of the judgment

To maintain his position that *all* of the income of the conjugal partnership must be divided in half for purposes of filing the returns by separated spouses, the appellee-taxpayer also invokes *Casal* v. *Sancho, Treas.*, 53 P.R.R. 609 (1938). This question was not directly involved there, but rather the determination of whether the election to file joint or separate returns was extended to a situation where the Treasury prepared the return ex officio for failure to file the one or the others. But be that as it may, the tax imposed on the taxpayer was based on income derived from rents from a sublease of a property, interest from a credit, and the share of the annual profits from a commission business;[5] and with regard to *profits*, as in *Méndez*, as with regard to this kind of income, we agree, as shall be seen, that they must be included half-and-half in the returns of separated spouses.

■■ 3.—The problem having been considered as one of a basically fiscal nature, we must adopt the rule which most closely relates to reality and contemplates best the purposes of the public treasury in agreement with an orderly family economic system. Nothing is more appropriate than referring to the source of the income to obtain the desired result. Within this framework it is reasonable to allow the distribution in two equal parts between separated spouses of income derived *directly* from assets or capital,[6] and to

roll of appeal 11,012 (pages 4 and 5) reveals that for the year 1942 the deficiency stemmed from the $5,899.23 increase in the income resulting from the profits obtained from the condemnation by the United States of America of three parcels of land located in Gurabo; and for the year 1944, from the $10,755.80 increase in the income resulting from the additional profits obtained in said condemnation by virtue of the judgment determining the final compensation, and $2,940 from the sale of a property.

[5] Judgment Roll, pages 8 and 24 of appeal No. 7402.

[6] Considering the provisions of § 1301(3) of the Civil Code, 31 L.P.R.A. § 3641, which includes among the conjugal property the fruits, rents or interest collected or accrued during the marriage from property which belongs to either of the spouses, the difference between conjugal capital and capital belonging to one of the spouses becomes unimportant for these purposes. See *Albanese* v. *Secretary of the Treasury*, 76 P.R.R. 302 (1954).

require that income deriving from the personal individual activity of one of the spouses be totally included by the latter. So, interest, dividends, gains and fruits, proceeds and profits derived from, or attributable to capital, shall be included in equal parts, while wages, salaries, and compensation of any sort for personal services rendered, or for remuneration from the practice of a profession, industry or business, shall be part of the income of the spouse who rendered the service.[7] It may be admitted that the rule supporting the control of income as the decisive view is more scientific, but the difficulties it entails for an easy administration—since it requires proof in each particular case—is a factor which militates strongly against its adoption.

However, the difference between this situation and that of the profit obtained (a) from the disposition of *real* property belonging to one of the spouses, *Gely* v. *Rodríguez,* 34 P.R.R. 496, 497 (1925), *Puente* v. *Pérez et al.,* 7 P.R.R. 181 (1904), and (b) from the disposition of stock, when capital gains derive from natural causes, that is, from the appreciation in value of fixed assets existing at the time of the marriage, and not to the deferment of gains or to the distribution of reserve funds accumulated during marriage, must be clearly understood. *Cf. Heirs of Santaella* v. *Sec. of the Treasury, ante,* p. 431.

[7] Mertens predicated an identical solution for cases where spouses resided in states where the economic regime of the conjugal partnership which allowed the distribution of income in separate returns prevailed, but since 1948, when the privilege of distribution of income was extended to all the country, this question is more or less academic. 3 Law of Federal Income Taxation, § 19.01 *et seq.;* see also, *The Tax Nationalization of Community Property,* 26 Taxes 14 (1948); *Federal Taxation of Community Property,* 34 Calif. L. Rev. 398–401 (1946); *Husband and Wife Under the Income Tax,* 5 Brooklyn L. Rev. 241 (1936); *Taxing the Income of the Husband and Wife,* 13 Taxes 198 (1935); *Federal Taxation of Community Property,* 12 Texas L. Rev. 273 (1934); *The Taxation of Family Income,* 41 Yale L.J. 1172 (1932); *The Modern Problem of the Nature of the Wife's Interest in Community Property—A Comparative Study,* 19 Calif. L. Rev. 567 (1931).

A provision of § 223 of the Regulations to the Income Tax Act of 1924, which established that "the husband shall include in his return the income derived from services rendered by the wife or from the sale of products of her labor *if she does not file a separate return* or join with him in a return setting forth her income separately" calls our attention.

The federal provision that allows separated spouses to file separate returns has existed since the first income tax laws[8] in perfect harmony with the system in which the individual return constituted the typical manner of determining the tax. Joint returns were allowed to spouses *living together* in a calendar year *at their option*. 4 Paul and Mertens, Law of Federal Income Taxation, § 39.06 (1934).[9] *Cf. Casal* v. *Sancho, Treas., supra*. But a separated spouse, as an individual taxpayer, could not make use of this option and, consequently, was bound only to report his own income in his returns. The principle was brought into Puerto Rico in 1924, using the same wording and it has been preserved unchanged in the present basic Act of 1954.

On those few occasions when similar situations have been considered, the tendency has been to maintain that, since the wife has a vested right to half of the income in those states where the economic regime of the conjugal partnership existed, she must include half of said income in her separate returns. *Bettie R. Funderburk Sparks*, 59,156 P-H Memo T.C.; *Sherman* v. *Commissioner of Internal Revenue*, 76 F.2d 810 (9th Cir. 1935). A rule of private law was resorted to and applied inflexibly and without further examination to a case of tax liability, a view which we have expressly discarded. However, the last expression on the subject appears to adopt the rule on distribution of income between separated spouses enunciated in this opinion. *Knodle* v. *Warren*, 19 Am. Fed. Tax R.2d 582 (1966).

---

[8] The first provision appears in the Internal Revenue Act of 1918, Act of February 24, 1919, Ch. 18, § 223, 40 Stat. 1074. As of that date this provision was kept in substantially the same manner until 1944. 26 U.S.C.A., Internal Revenue Acts, 1924 to date, pp. 34, 180, 366, 500, 682, 843, and 1030.

[9] The practical effect of the option was to allow the spouses to elect the method which resulted in a lesser tax. It was generally used in those cases where a reduction of the taxable gross income was reached through the deduction of a net loss sustained by one of the spouses.

Applying the above rule to the facts in this case, the gross income of the appellee-taxpayer must include the total amount of the salaries earned by him and half of the amounts received as dividends, interest, and capital gains from the disposition of conjugal property. Of course, the deductions allowed by law and connected with the production of the different income items shall be granted in the same proportion.

Judgment will be rendered accordingly.