DOMENECH v. HAVEMEYER et al.

SAME v. SOUTH PORTO RICO SUGAR CO.
(OF PORTO RICO).

SAME v. SOUTH PORTO RICO SUGAR CO.
(OF NEW JERSEY).

Nos. 2479–2481.

Circuit Court of Appeals, First Circuit.
April 28, 1931.

William C. Rigby, of Washington, D. C. (James R. Beverley, Atty. Gen. of Porto Rico and Grant T. Trent and Edward A. Kreger, both of Washington, D. C., on the brief), for appellant.

Francis E. Neagle, of New York City (Rounds, Dillingham, Mead & Neagle, of New York City, on the brief), for appellees.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This consolidated record presents appeals from three decisions of the court below sus-

850

taining demurrers to suits brought to recover income and excess profits taxes. In 2479, the defendant's tax year ended on May 31, 1920; in 2480 and 2481, on September 30, 1920. In all three cases the taxes claimed are grounded on Act No. 43 of Porto Rico, approved July 1, 1921. The three defendants made seasonable returns under this act and paid the taxes assessed by the treasurer in accordance therewith: Russell & Company $16,848.10; the South Porto Rico Sugar Company of Porto Rico and the New Jersey Company, on a consolidated return, $255,-492.28.

The treasurer, after examination of the books of the three concerns, made a new assessment on a consolidated return of the three, of $1,232,605.54. On appeal by the defendants to the Board of Review and Equalization, that board found and ruled as follows:

(a) That the income tax return of the defendant Russell & Company should not be consolidated with the return of the South Porto Rico Sugar Company of New Jersey nor with the return of the South Porto Rico Sugar Company of Porto Rico.

(b) It confirmed the decision of the Treasurer of Porto Rico of February 28, 1924, in so far as he determined the gross income of Russell & Company at $5,281,-696.67 and the net income at $2,574,175.94.

(c) It confirmed the said decision of the Treasurer of Porto Rico fixing the invested capital of Russell & Company at the sum of $999,249.19.

Pursuant to these findings and rulings the treasurer, in May 1924, notified the defendants of additional taxes for said tax periods: Of $553,227.38 against the defendant Russell & Company; of $324,478.84 against the defendant South Porto Rico Sugar Company of Porto Rico; of $9,441.42 against the defendant South Porto Rico Sugar Company of New Jersey; all plus interest at 6 per cent. from May 18, 1924.

Defendants' first contention is that Act No. 69 of 1923 cut off all power, if any, that Porto Rico had to levy these taxes.

Section 2 of said Act No. 43 of 1921 reads:

"The first taxable year for the purposes of this Act, shall be the calendar year ending the thirty-first of December, 1920, or any accounting period ending during the calendar year 1920."

Act No. 69 of 1923 provides in section 1 that section 2 of Act No. 43 of 1921 is "here-by amended as follows: * * * The first taxable year for the purposes of this Act, shall be the calendar year 1923 or any fiscal year ending on any date in the calendar year 1923." And section 4 of Act No. 69 repeals all laws or parts of laws in conflict therewith, without a saving clause as to unpaid taxes or any accrued penalties. But none was necessary; it was subject to the general provision of section 3093 of the Rev. Stats. and Codes of Porto Rico, reading:

"The repeal of any statute by the Legislative Assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as *still remaining in force* for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

All liabilities and penalties of Act No. 43, if and in so far as valid, remained in full force. Compare also Rev. St. U. S. § 13 (1 USCA § 29); Hertz v. Woodman, 218 U. S. 205, 216, 30 S. Ct. 621, 54 L. Ed. 1001; United States v. Ayer et al. (C. C. A.) 12 F.(2d) 194, 197. This statute seems to have been overlooked by the court below and by counsel on both sides. It disposes of the first main contention of counsel for the defendants.

The next contention of the appellees is that the Legislature of Porto Rico had, in 1921, no power to enact an income and excess profits tax law. It is true that that Legislature has no powers except those granted expressly, or by necessary implication, by Congress. Benedicto, Treasurer, v. Porto Rican Am. Tobacco Co. (C. C. A.) 256 F. 422, 425.

But, by section 37 of the Organic Act of March 2, 1917 (39 Stat. 964 [48 USCA §§ 774, 821]), the Porto Rican Legislature was given general legislative powers, and by section 3 (39 Stat. 953 [48 USCA § 741]) was granted power to levy "taxes and assessments on property, *internal revenue,* and license fees, and royalties for franchises, privileges, and concessions."

The Sixteenth Amendment had then been adopted; there is much weight to the contention that "internal revenue," as used in this act, covered income taxes, without apportionment, in Porto Rico, as it then did in the United States. Cf. Bowers, Collector, v. Kerbaugh-Empire Co., 271 U. S. 170, 174, 46 S. Ct. 449, 70 L. Ed. 886. Pollock v.

Farmers' L. & T. Co., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; Brushaber v. Union Pacific R. R., 240 U. S. 1, 17, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713.

The federal income tax laws of 1913 (38 Stat. 180, § 2 M) and of 1916 (39 Stat. 776, § 23) applied to Porto Rico, and provided that such taxes should be there collected and applied to Porto Rican uses. By section 5 of the Act of October 3, 1917 (40 Stat. 300, 302), the Legislature of Porto Rico was given power to "amend, alter, modify, or repeal the income laws in force in Porto Rico." This was repeated in the Act of February 24, 1919 (40 Stat. 1057, § 261), and in the Act of November 23, 1921 (42 Stat. 227, 271, § 261), Congress provided that in Porto Rico and in the Philippines income taxes should be levied, assessed, and collected as provided by law prior to the passage of the federal act of that year, and further authorized the Porto Rican Legislature to amend, alter, modify or repeal the income tax laws in Porto Rico.

That Legislature, by Act No. 80 of 1919, repealed the federal income tax law, and then enacted an income tax law of its own. Laws of Porto Rico, 1919, § 77, p. 670.

Obviously there is very little difference between power to "amend, alter, modify, or repeal" a federal law, and power to enact a like law de novo. Moreover, all Porto Rican laws are, under sections 23 and 34 of the Organic Act (39 Stat. 958, 960 [48 USCA § 842, and § 822 et seq.]), required to be reported to Congress, which reserved power to annul them. Congress never annulled this act or any similar act of Porto Rico. This is entitled to consideration in determining the extent of power granted to the Porto Rican Legislature. Chuoco Tiaco v. Forbes, 228 U. S. 549, 558, 33 S. Ct. 585, 57 L. Ed. 960; Fajardo Sugar Co. v. Holcomb (C. C. A.) 16 F.(2d) 92, 96, and cases cited.

Section 261 of the federal act of 1924 (43 Stat. 294 [48 USCA § 845]) corresponds in terms to that of section 261 of the act of 1921, and is again found in the federal act of 1926 (44 Stat. 52 [48 USCA § 845]); and in the United States Code, as revised in 1926 (44 Stat. part 1, p. 1623, § 845), is found the same provision giving the Porto Rican Legislature authority to amend, alter, modify or repeal the income tax laws in force in Porto Rico.

That Congress intended the Legislature of Porto Rico to have power to enact income tax laws is expressly shown by the Act of March 4, 1927 (44 Stat. 1418). This may fairly be construed as intended to make absolutely clear what had been implied before.

Taking the whole course of congressional dealing with the functions of the Porto Rican Legislature, we think that, by fair and necessary implication, and perhaps expressly, it was vested with power to enact an income tax law in 1921. This disposes of the appellees' second main point.

The argued application of section 62 of Act No. 43 requires an outline of the relations of the three defendants.

The partnership (Russell & Company) owns the sugar land, grows the cane, and sells it to the Porto Rican corporation (the mill), which in turn sells the raw sugar to the New Jersey Company which puts it on the market. The New Jersey corporation owns all the stock of the Porto Rican corporation except qualifying shares of directors. The majority of the shares of the New Jersey corporation belong to Russell & Company.

It is obvious and conceded that there is identity of interest between the two corporations. But mere ownership of the majority of stock of the New Jersey corporation obviously does not produce identity of interest between the partnership and the New Jersey corporation; the two concerns are not only separate legal entities, but the beneficial interests are different. Paragraph XV of the complaint in No. 2479 must be construed with paragraph XVII, which expressly alleges on information and belief that a mere majority of the stock of the New Jersey corporation is owned by the partnership.

Under intercompany contracts of sale of the cane and the raw sugar, the profit or loss of the ultimate public marketing of the sugar produced, falls to the New Jersey corporation. These contracts were long antecedent to the passage of Act No. 43 of 1921.

Section 62 of the Act No. 43 reads as follows:

"Where in the income return of any person, firm, association or corporation filed for the purposes of this Act, profits appear on account of sales of agricultural or industrial fruits or products made to other persons, firms, associations or corporations at a price lower than the ruling market price at the time that such sales were made, it shall be the duty of the Treasurer of Porto Rico to investigate the case—should there be probable cause to believe it is a question of fraud or

an attempt to defraud the public treasury—for the purpose of determining whether or no such person, either natural or artificial, as may appear as purchasing or selling the aforesaid fruits, merchandise, agricultural or industrial products at a price lower than the ruling price on the market at the time of the consummation of the sales, is the same entity whose income tax is under discussion, and whether or not there is any identity of interests, though under different names, designations or organizations between both entities subjects of the investigation referred to, for the purpose and object of recovering and collecting in such manner as may be proper, either by administrative readjustment or in lieu thereof by judicial proceedings, the income which really and positively should be paid to the Treasury, consideration being given to the ruling market price of the products sold in the market on the date of the sales the legality of which is being investigated."

This section cannot, on the facts alleged, be applied to ground a tax on the partnership based on the much higher market prices alleged to have been paid the other colonos by the Porto Rican corporation. The contract of sale of the cane was not void. There was no fraud on Porto Rico. A mere allegation of such fraud, without alleging any facts indicating fraud, is not enough. Chamberlain Works v. United States, 270 U. S. 347, 349, 46 S. Ct. 225, 70 L. Ed. 619; 49 C. J. 59.

Besides (if we could treat the three concerns as one), it is not even alleged that the New Jersey corporation sold the sugar—thus derived from the cane grown and sold by the partnership to the Porto Rican corporation, and thus, in practical effect, to the New Jersey corporation—at the high speculative prices then obtaining. Non constat, that the New Jersey corporation may not have held, until prices dropped, so much of its sugar that—considering the high prices paid the other colonos for cane—it might have made no profit at all.

At any rate, there is nothing alleged to show any such actual income to the partnership as the plaintiff seeks to impose income and excess profits taxes upon, and it is in effect admitted that no such profits were received. The alleged income is nothing but fiat income—no more taxable than the paper profits stock speculators had in 1928 and 1929—shortly, in many cases, to be changed into actual losses. Compare Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 174, 46 S. Ct. 449, 70 L. Ed. 886. The complaint in No. 2479 does not state a cause of action.

█ The taxes now sought to be recovered in all three suits are largely excess profits taxes. We think them condemned by section 2 of the Organic Act (39 Stat. 952 [48 USCA § 737]), which requires the Legislature of Porto Rico to make its taxes uniform.

But this Act No. 43 of 1921, in section 17 (3), entitled "Excess Profits Taxes," provides that: "In addition to the normal tax there shall be levied * * * on the net income exceeding $10,000 * * * an excess profits tax in the manner following: When the proportion between the net income and the capital invested is less than 15 percent, 5 percent on the net income exceeding 10 percent of the capital invested in the taxable year." There follow, under section 17 (3), ten paragraphs dealing with the profits above 10 per cent. on the capital invested, in each case providing for taxes at a higher rate on the entire excess above the 10 per cent. It follows that a taxpayer whose net income was slightly below—say 20 per cent. on the capital invested—would be taxed on his whole net income above 10 per cent. at only 5½ per cent.; while a taxpayer whose income was slightly above 20 per cent. would be taxed 6 per cent. on his entire net income above 10 per cent. on the capital invested. In other words, a very slight difference in the net income of the taxpayer would result in a substantial increase in the rate of taxation to which the bulk of his income would be subject. The higher rate (surtax) is not limited, in its incidence, to the amount in excess of the percentage at which the higher rate begins, as in the federal tax law. Compare Act of October 3, 1917, § 2 (40 Stat. 300, 301), and Revenue Act of 1918, § 211 (a), 40 Stat. 1062. This cannot be sustained.

█ It is also plain that, in Nos. 2480 and 2481, the income of the two South Porto Rico Sugar Companies—one of Porto Rico and the other of New Jersey—must be consolidated. These corporations were clearly affiliated within the meaning of section 24 of the Act of 1921, supra. The fact that one corporation was organized in Porto Rico and the other in New Jersey is immaterial.

As noted above, the appeals are here from rulings sustaining the demurrers. The general result must be sustained, but without prejudice to any right the plaintiff may have to amend.

The judgments of the District Court are affirmed, with costs, and the cases are remanded for further proceedings not inconsistent with this opinion.