Ochoa Fertilizer Corporation, peticionaria, *v.* Tribunal de Contribuciones, demandado; Tesorero de Puerto Rico, interventor.

Núm. 169.—*Sometido:* Febrero 3, 1948. *Resuelto:* Marzo 18, 1948.

*Córdova & González* y *Carlos J. Faure,* abogados de la peticionaria; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

¿Erró el Tribunal de Contribuciones al resolver que la exención contributiva concedídale a la peticionaria en 1940 por la Comisión de Servicio Público a tenor con la Ley núm. 94, Leyes de Puerto Rico, 1936 ((1) pág. 495), no incluye los derechos de licencia sobre vehículos de motor?

La primera cuestión a determinarse es si tales derechos son una contribución. La peticionaria admite que bajo el poder de policía la Legislatura puede proveer para la reglamentación del tránsito y que los derechos cobrados para hacer frente a los gastos de tal reglamentación no son contribuciones. Pero arguye que tales derechos son contribuciones cuando la renta es el fin primordial y la reglamentación es sólo el fin incidental de esos derechos de licencia. Y, según la peticionaria, aquí concurre esta última condición porque (1) las cantidades cobradas—que oscilan entre $500,000 y $1,500,000 al año ·desde el 1942 hasta el 1946— exceden en ·demasía el costo de la reglamentación; (2) estos derechos desde 1937 a la fecha han sido separados en un fondo especial, no para los gastos de reglamentación, sino para la construcción de carreteras con el fin de cumplir con la Ley Federal de Carreteras, 23 U.S.C.A. Secs. 55, 41(a);(1) y (3) los gastos de la División de Automóviles del Departamento del Interior no se han sufragado de los derechos de licencia sino de los fondos generales asignados en la Ley General de Presupuesto.

Los casos en que descansa la peticionaria envuelve la constitucionalidad de las leyes en cuestión. Por diversos motivos, la mayor parte de ellos resuelve que estas leyes serían inválidas si proveyeran para el cobro de contribuciones y válidas si se aprobaron con la intención de hacer frente a los gastos de la reglamentación. *Vernor* v. *Secretary of State,* 146 N.W. 338 (Mich., 1914); *Ex Parte Schuler,* 139 P. 685 (Calif., 1914); *State* v. *Wetz,* 168 N.W. 835 (N.D., 1918); *Firestone* v. *City of Cambridge,* 148 N.E. 470 (Ohio, 1925); *Carley & Hamilton* v. *Snook,* 281 U.S. 66; *Sprout* v. *South Bend,* 277 U.S. 163; 4 Cooley, *The Law of Taxation,*

---

(1)Ley núm. 143, Leyes de Puerto Rico, 1937 (Leyes de 1936–37, pág. 316); Ley núm. 140, Leyes de Puerto Rico, 1940 (pág. 783); Ley núm. 55, Leyes de Puerto Rico, 1942 ((1) pág. 527); Ley núm. 279, Leyes de Puerto Rico, 1946 ((1) pág. 599).

4ta. edición, sec. 1784, págs. 3509–16.(²)   Ninguno de estos casos trata sobre la cuestión de si una exención contributiva incluye los derechos de licencia.

Por otro lado, el Tesorero cita otros casos, algunos de los cuales aparentemente resuelven que aun cuando los derechos cobrados excedían de la suma necesaria para la reglamentación, los derechos de licencia impuestos sobre la operación de vehículos de motor en las carreteras no eran contribuciones.  *Atkins* v. *State Highway Department,* 201 S.W. 226 (Tex., 1918); *Ard* v. *People,* 182 P. 892 (Colo., 1919); *Carter* v. *State Tax Commission,* 96 P.2d 727 (Utah, 1939); *Foshee* v. *State,* 72 So. 685 (Ala., 1916); 1–2 Huddy, *Cyclopedia of Automobile Law,* 9na. ed., sec. 137, págs. 331–2. *Cf. The RFC Mortgage Co.* v. *Registrador,* 60 D.P.R. 235; *Félix* v. *Esteves, Comisionado,* 41 D.P.R. 719.

Nuestro problema es enteramente diferente a las cuestiones de constitucionalidad levantadas por los casos citados por ambas partes.   Aquí sólo tenemos que ver con la intención de la Legislatura al conferirle poder a la Comisión de Servicio Público para conceder exenciones contributivas. Por tanto, suponemos, sin decidirlo, que la contención de la peticionaria es correcta y que estos derechos de licencia son, en términos generales, clasificados como contribuciones, por lo menos hasta el punto de que la renta que ellos producen excede del costo de la reglamentación.   En igual forma, suponemos, si bien este derecho de licencia no es un arbitrio clásico sobre venta o uso, que tal derecho es un arbitrio adi-

---

(²)*Cf. Murdock* v. *Pennsylvania,* 319 U.S. 105, 113–114; *County Com'rs. of Anne Arundel County* v. *English,* 35 A. 2d 135 (Md., 1943); artículo 113, *Income Tax Regulations, No. 1;* 5 Mertens, *Law of Federal Income Taxation,* sec. 27.05, págs. 20–21, sec. 27.34, págs. 41–42; *Holeproof Hosiery Co.,* 11 B.T.A. 547; *Bank of Mount Hope,* 25 B.T.A. 542; *City of Charlottesville* v. *Marks' Shows,* 18 S.E.2d 890 (Va., 1942); *Lamere* v. *City of Chicago,* 63 N.E.2d 863 (Ill., 1945); *Maryland Theatrical Corporation* v. *Brennan,* 24 A.2d 911 (Md., 1942).

cional.(³)   Pero estas suposiciones no significan necesaria-
mente que la peticionaria deba resultar victoriosa en este
caso.   Solamente nos llevan a considerar el segundo error.

En el segundo señalamiento la peticionaria alega que el
Tribunal de Contribuciones cometió error al resolver que
la Comisión no tenía autoridad para incluir los derechos de
licencia en las exenciones contributivas que ésta podía con-
ceder de acuerdo con la Ley núm. 94.   Las secciones 3 y 4
de la Ley prescriben en parte como sigue:

"Sección 3.—Por la presente se le concede autoridad a la Comi-
sión de Servicio Público para otorgar *exención de contribuciones* a
todas aquellas nuevas industrias que se establezcan en Puerto Rico,
y su decisión deberá ser aprobada por el Gobernador de Puerto Rico.
Las industrias nuevas a quienes se conceda *exención de contribucio-
nes*, sus edificios, maquinarias, materiales y en general todos los bie-
nes, derechos y privilegios pertenecientes a dichas industrias, que sean
imperiosamente necesarios para su trabajo y funcionamiento, esta-
rán exentas de contribuciones por el período de tiempo que fijare la
Comisión de Servicio Público de Puerto Rico que en ningún caso
deberá exceder de diez (10) años, y cuyo término se contará desde
la completa instalación industrial; *Disponiéndose*, que, tal exención
de contribuciones no comprenderá la contribución sobre ingresos que
deba satisfacer la persona, firma, sociedad o corporación explotadora
de dicha nueva industria, ni la cuota correspondiente a la Ley de
Indemnizaciones a Obreros.   . . . . .

"Sección 4.—Cuando la Comisión de Servicio Público de Puerto
Rico otorgue a una nueva industria la exención de contribuciones
que por esta Ley se dispone, el *municipio* en el cual radique dicha
nueva industria vendrá obligado a reconocer tal exención; y, en su
consecuencia, estará impedido de cobrar a dicha nueva industria
*licencias*, patentes, arbitrios municipales o cualquier otra contribu-
ción municipal, mientras esté vigente el período de exención con-

---

(³)No podemos convenir con el Tesorero en que estos derechos de licencias
son derechos de portazgo.   Se cobra un portazgo por el privilegio de transitar
por una carretera o puente cada vez que dicho privilegio se ejercita.   Se cobra
un derecho de licencia sobre el uso de vehículos de motor independientemente
de carreteras específicas o la frecuencia o forma de uso.   *Carley & Hamilton
v. Snook*, supra, 73–74.   En verdad, según se dijo en el caso de *Snook*, la sec-
ción 9 de la Ley Federal de Carreteras prohibe el cobro de portazgo por el
uso de las carreteras construídas bajo dicha ley.

cedido; *Disponiéndose,* que no se decretará ninguna exención de pago de contribuciones, *patentes* o arbitrios municipales sin oír previamente al municipio afectado.'' (Bastardillas nuestras).

La opinión del Tribunal de Contribuciones dice en parte así:

''Nótese que la sección 3, supra, autoriza a la Comisión de Servicio Público para otorgar *exención* de *contribuciones* a todas aquellas industrias nuevas que se establezcan en Puerto Rico, pero no dispone para la exención del pago de derechos por licencias *insulares.* Es la sección 4, supra, la que se refiere a *licencias,* patentes, etc., *municipales.*

''Resulta obvio, pues, que la Ley núm. 94 de 1936, supra, no faculta a la Comisión de Servicio Público a otorgar a industrias nuevas, exenciones del pago de derechos de licencias *insulares,* y por lo tanto, dicho organismo no pudo haber concedido válidamente, si es que lo concedió, en forma alguna, tal privilegio a la aquí querellante.''

No vemos de qué manera podemos eludir esta interpretación de la Ley núm. 94. En la exención contributiva que le concedió a la peticionaria, la Comisión tuvo la intención de eximirla de ''toda clase de contribuciones y derechos de licencias, patentes y arbitrios municipales, y de toda otra contribución municipal . . .''. Esto cubre los derechos insulares de licencias, ya sean clasificados como contribuciones para producir rentas o como derechos para hacer frente a los gastos de la reglamentación. Pero la dificultad estriba en el hecho de que la Ley núm. 94 no confiere a la Comisión un poder tan amplio que la autorice a eximir a la peticionaria del pago de derechos de licencia, aun cuando se admitiera que éstos son contribuciones.

La peticionaria tendría un caso mejor si los derechos de licencia sobre vehículos de motor fueran siempre impuestos exclusivamente para producir rentas. Pero si bien ello es teóricamente posible, tales derechos de licencia no son de ordinario impuestos únicamente para producir rentas. Generalmente, aun cuando se impongan primordialmente para

fines de rentas, tienen aspectos incidentales, pero sustanciales, de reglamentación. Esto contrasta con los arbitrios clásicos que, en términos generales, de ordinario no tienen elemento sustancial de reglamentación y son casi invariablemente para producir rentas. *Cf. Porto Rico Telephone Co. v. Tribunal de Contribuciones,* pág. 154 ante.

El hecho de que los fondos cobrados por derechos de licencia se depositen en los fondos generales de la Tesorería o en un fondo especial para otros fines ajenos a la reglamentación, no quiere decir necesariamente que las disposiciones para derechos de licencia sean puramente medidas contributivas. Véase 4 Cooley, supra, pág. 3516; *Vernor v. Secretary of State,* supra; *Carter v. State Tax Commission,* supra, pág. 731.

Hay otros aspectos del derecho de licencia sobre vehículos de motor que lo distinguen de la contribución corriente, que es un tributo para el sostenimiento del Gobierno y que de ordinario es aplicada involuntariamente a todas las personas que caen dentro de ciertas clases definidas. No se requiere el pago si el dueño deja el vehículo en el garage; si lo usa durante parte del año, sólo debe pagar una parte proporcional del derecho; éste puede cancelarse bajo ciertas circunstancias, a pesar del pago del derecho; y deben exhibirse las tablillas, páguese o no el derecho. En resumen, estos derechos de licencia no son exclusivamente para producir renta, sino que son parte fiscales y parte reglamentarios. Como tal, representan una forma peculiar de tributación que la Legislatura no tuvo la intención de incluir bajo la Ley núm. 94 que autorizó las exenciones contributivas. En verdad, aparentemente nunca se le ocurrió a la peticionaria que estuviera exenta del pago de estos derechos de licencia durante los cinco años—1942 a 1946—en que pagó por los mismos la suma de $957.67.

La cuidadosa diferencia fijada en las secciones 3 y 4 de la Ley núm. 94 entre los derechos de licencia y otras

clases de "contribuciones" también se encuentra en el artículo 3 del Acta Orgánica. El Congreso creyó aconsejable en 48 U.S.C.A. sec. 741 establecer los derechos de licencia, quizás en vista de su naturaleza parte reglamentaria y parte fiscal, como una categoría especial de "contribuciones" que la Legislatura estaba expresamente autorizada a imponer. Esto se hizo así, aun cuando podría argüirse con considerable fuerza que la autoridad conferida por el artículo 3 del Acta Orgánica para imponer contribuciones de rentas internas incluía el poder de imponer derechos de licencia. Véanse *Buscaglia* v. *Ballester,* 162 F.2d 805 (C.C.A. 1st, 1947). *Cf. Rivera* v. *Buscaglia,* 146 F.2d 461 (C.C.A. 1st, 1944); *Domenech* v. *Havemeyer,* 49 F.2d 849 (C.C.A. 1st, 1931).

La peticionaria podría argumentar que aun las contribuciones clásicas, así como los derechos de licencia, son algunas veces impuestos para la reglamentación así como para rentas, y en consecuencia el aspecto reglamentario de los derechos de licencia no los diferencia de las contribuciones, según éstas se definen en la Ley núm. 94. Pero disposiciones implícitas sobre reglamentación sólo aparecen ocasionalmente en tales medidas contributivas, mientras que la reglamentación es un aspecto frecuente, si no casi invariable, de la legislación que provee para derechos de licencia. Y la reglamentación ciertamente juega un gran papel, aun cuando sea incidental, en nuestras leyes que prescriben derechos de licencia sobre vehículos de motor. Si bien el asunto no carece de dificultades, no podemos decir que el posible aspecto reglamentario que se vislumbra en algunas contribuciones clásicas, nos exige que clasifiquemos un derecho de licencia, que usualmente tiene un prominente aspecto reglamentario, como una contribución. En verdad, la misma dificultad del asunto opera para destruir la reclamación de la peticionaria. "Las exenciones contributivas no pueden inferirse; deben consignarse específicamente en len-

guaje claro e inequívoco. (Citas.) No encontramos . . . tal lenguaje específico" en la Ley núm. 94 para derechos insulares sobre licencias. *Puerto Rico Ilustrado* v. *Buscaglia, Tes.,* 64 D.P.R. 914, 918; *National Hats Co.* v. *Sancho, Tes.,* 65 D.P.R. 241; *Crown Beverages* v. *Buscaglia, Tes.,* 65 D.P.R. 814, 819, escolio 5.

El caso de *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420 (1914) en que descansa la peticionaria, no le favorece. Allí se resolvió que una disposición constitucional que imponía cierta contribución sobre el ingreso bruto "en vez de toda otra clase de contribuciones y *licencias,* estatales, de los condados y municipales" eximía a una corporación de servicio público de derechos de licencia sobre la operación de vehículos de motor. Pero el punto es precisamente que nuestra ley no autoriza específicamente la exención de derechos de licencia. Y véase *Connecticut Light & Power Co.* v. *Walsh,* 16 L.W. 2381 (Conn., 21 de enero de 1948).

La peticionaria también descansa en *Buscaglia* v. *Tribunal de Contribuciones,* 66 D.P.R. 711, en el que resolvimos que el peticionario estaba exento de los arbitrios clásicos, y en *Buscaglia* v. *Tribunal de Contribuciones,* 67 D.P.R. 57, donde dijimos que (pág. 60), " . . . la Legislatura de Puerto Rico ha venido desde el año 1919 siguiendo la política de eximir del pago de contribuciones y arbitrios a varias y determinadas industrias contribuyendo así de una manera práctica al fomento y desarrollo de la industrialización insular." Pero, como hemos visto, el Congreso en el Acta Orgánica y la Legislatura en la Ley núm. 94 han puesto las "contribuciones" sobre licencias en una categoría especial en vista de su peculiar *status* parte fiscal y parte reglamentario. Por tanto no caen dentro de los términos generales de la Ley núm. 94 que dispone las exenciones contributivas, que incluyen los arbitrios corrientes. Sólo si la Legislatura hubiera expresamente autorizado a la Comisión de Servicio Público a conceder exenciones de derechos de licencias podría la Comi-

sión conceder tales exenciones. La Ley núm. 94 no hizo esto. Por el contrario, dicha ley específicamente disponía la exención de toda clase de contribuciones insulares, excepto derechos de licencia. La sección 4 de la Ley núm. 94 autoriza la exención de derechos de licencias municipales, pero no insulares. En su consecuencia, la Comisión de Servicio Público carecía de autoridad para incluir los derechos de licencia sobre vehículos de motor en la exención contributiva que le concedió a la peticionaria.

El resultado a que hemos llegado hace innecesario examinar las contenciones del Tesorero con respecto a su autoridad para devolver un derecho de licencia y en cuanto a la jurisdicción del Tribunal de Contribuciones.

*La decisión del Tribunal de Contribuciones será confirmada.*