José Miranda Rodríguez, Plaintiff and Appellant, *v.* Sol Luis Descartes, Secretary of the Treasury, Defendant and Appellee.

No. 10912. Argued December 2, 1953.—Decided November 3, 1954.

160

*Félix Ochoteco Jr.,* for appellant. *J. B. Fernández Badillo, Acting Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General, for appellee.*

Mr. Justice Pérez Pimentel delivered the opinion of the court.

Homestead was for the first time exempted from taxation in Puerto Rico by enacting Act No. 27 of April 12, 1941 (Sess. Laws, p. 456), amending § 291 (*a*) of the Political Code. By virtue of that amendment, the pertinent part of that provision was changed to read as follows:

"Section 291.—The following property shall be exempt from taxation:

"(a) Property of persons whose total property is assessed at less than one hundred (100) dollars; and, for purposes of homestead protection, there shall also be exempted from taxation all property on which the owner, being the head of a family, has his homestead constituted, provided his total property is assessed at less than one thousand (1,000) dollars; *Provided,* That the circumstances herein established as justification for homestead protection shall be proved by an affidavit of the interested person made before the collector of internal revenues on the blanks that the latter shall furnish him free of cost.

. . . . . . . . ."

José Miranda Rodríguez, appellant herein, is the owner of certain property consisting of a house and lot situated in the town of Cataño, Puerto Rico, wherein his homestead is constituted, and which was tax exempt under the provisions of Act No. 27, *supra*. In 1951 the Legislature once more amended § 291 of the Political Code[1] by Act No. 119 of April 24, 1951 (Sess. Laws, p. 262). As to the aspect herein involved, the amendment exempted from assessment, for taxation purposes, "all property on which the owner has his homestead constituted, provided his total property is assessed at less than two thousand five hundred (2,500) dollars." This adjustment in the total assessed value of the properties of a homestead owner, increasing it from $1,000 to $2,500, was due to the fact that, as declared in the statement of motives of Act No. 119, *supra*, a general raise in the assessed valuation of all properties in Puerto Rico was expected on account of the reassessment of property which was being carried out under another Act approved in 1947

---

[1] Act No. 27 of April 12, 1941 had already been amended by Act No. 42 of July 23, 1947 (Spec. Sess. Laws, p. 164), and by Act No. 91 of May 5, 1948 (Sess. Laws, p. 204), but none of those amendments affects the problem herein involved.

—Act No. 117 of May 9 of that year (Sess. Laws, p. 263), known as "Act for the Cadastration, Classification and Assessment of Property."[2]

When the reassessment was made, appellant's real property, which is his only property, was assessed at $2,670. There is no controversy on the correctness of this assessment. By reason thereof, the Treasurer proceeded to assess a tax in the sum of $48.59 on that property for the fiscal year 1951–52. Upon demand to pay, the taxpayer paid only the sum of $2.70, which represented the portion of the tax levied with which he was satisfied and which corresponded to the excess of the assessment over $2,500, namely, $170. Thereupon he filed a complaint in the former Tax Court, now Superior Court, in which, after setting forth the facts recited above, he alleged that under Act No. 119 of April 24, 1951 he is entitled to a tax exemption of $2,500 as homestead protection, and that he was therefore bound to pay taxes only on the excess of $2,500, for the following reasons:

"Because in order that the exemption of $2,500 established by § 291(a) of the Political Code of Puerto Rico in favor of properties on which the owners have their homestead constituted whenever their total property is assessed at less than $2,500, be constitutional, such exemption must also be granted to those properties on which the owners have their homestead constituted after the requirements of § 291(a) supra have been met, regardless of whether their total assessed value is $2,500 or more, since the failure to grant the oft-mentioned exemption up to the aforesaid amount of the latter properties would be in contravention of the Organic Act of Puerto Rico, because:

"It would infringe § 2 as violative of the general principles of uniformity governing the imposition of taxes and of the equal protection of the laws and, hence, depriving plaintiff of the right to equal treatment free from all discrimination."

[2] The revision of the assessment carried out under the provisions of this Act is commonly know as "Scientific Assessment."

The Treasurer answered accepting the essential facts of the complaint, but denying that plaintiff was not bound to pay the taxes imposed for the reasons adduced in the complaint or otherwise. Upon service of notice of this answer, plaintiff moved for summary judgment on the ground that there was no controversy on the facts, defendant having merely opposed plaintiff's claim for reasons of law. After hearing the parties on this motion, the lower court rendered judgment dismissing the complaint. Plaintiff appealed and, although in his brief he assigns four errors, he agrees that the same "involve an identical legal question, namely, the constitutionality of § 291(a) of the Political Code. ..."

█ In declaring the public policy of the Government of Puerto Rico with respect to homestead protection, our Legislature established a class which was favored by the tax exemption. The classification was made on the basis of the total assessed value of all properties of those persons who were owners of a property on which their homestead was constituted. Thus, any homestead belonging to a person whose total property was assessed at less than $1,000 under Act No. 27 of 1941, or $2,500 under the 1951 amendment, was exempted from taxation.

The problem herein involved narrows down, in the final analysis, to a determination of whether the Legislature exceeded its powers in establishing such classification, for otherwise the statute would successfully resist an attack on its constitutionality.

Our former Organic Act provided in § 2 that no law shall be enacted in Puerto Rico which "shall deny to any person therein the equal protection of the laws," and that "the rule of taxation in Porto Rico shall be uniform."[3]

---

[3] The case under consideration arose during the operation of the Organic Act. However, these provisions continue fundamentally in force since the Constitution of the Commonwealth of Puerto Rico contains similar provisions. See Art. II. § 7, and Art. VI, § 3, of the Constitution.

164

It is unnecessary, in our opinion, to elaborate in the consideration of the uniformity clause. It will suffice to repeat what has been said many time before—that this clause does not exact intrinsic uniformity; it only requires geographical uniformity in all Puerto Rico. *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 93, and cases therein cited. Let us therefore consider whether the statute under consideration is unconstitutional as denying to appellant the equal protection of the laws.

 The problem confronting the Legislature in establishing the tax exemption in favor of a homestead, the reasons which impelled it to establish such exemption, and the reasons for limiting the same to a class created by the Legislature itself, appear clearly from the Statement of Motives set forth at the beginning of Act No. 27, 1941, from which we quote as pertinent the following:

"Section 1.—*Statement of Motives:*—The housing problem is one of the most serious problems now facing the people of Puerto Rico. Among the poorer classes and the class of people having limited resources, this problem assumes, in fact, serious proportions. The problem has two phases: the need of providing housing facilities for those who lack them or who are housed at unsuitable places injurious to health, and the need of establishing guarantees for conservation of the home in favor of those families that, at the cost of great efforts and economic sacrifices, have succeeded in acquiring a dwelling.

"Pursuant to legislation in force, the homestead is subject to taxes just like any other property held for purposes of profit. Considering the economic situation prevailing in Puerto Rico and the low level of individual incomes, the tax rate obtaining in the island is very high and constitutes a heavy burden on the generality of persons who are poor or who have limited means and who, in most cases, have no other property than the house where they shelter their families.

"According to the official statistics of the Department of Finance of Puerto Rico, the persons of limited means who cannot pay the taxes levied on the property on which their homesteads is (sic) constituted are counted by the hundreds. As a consequence of nonpayment these properties are liable to

attachment proceedings and public sale as the result of which many heads of family lose their homesteads.

"It is within the incumbency of the government to provide necessary facilities in order that the citizens may keep their steads. The property where the homestead is constituted enjoy ample protection by law, not only in regard to .,m from attachment and execution by private persons but also by the government itself which has a justifiable interest in that the citizens may keep their homesteads and enjoy proper houses.[4]

"It is declared, therefore, that it is the public policy of this Act to establish homestead protection. In order that the benefits of this policy may reach the greatest possible number of citizens, such homestead protection should be extended as far as the resources of the Treasury of Puerto Rico, the normal operation of municipal finances and the proper conduct of the Insular Government, permit.

"As a first step in the accomplishment of this policy of homestead protection the Legislature of Puerto Rico considers it is absolutely essential to exempt from taxation every property on which the owner, as head of a family, has his homestead constituted, provided his total property is assessed at less than one thousand (1,000) dollars)."

The wide discretion possessed by the Legislature in the field of taxation has long been recognized. Traditionally, the "classification" has been a device for adjusting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden.[5] However, the Legislature can not exercise this power, which is not absolute, arbitrarily or unreasonably. The judicial decisions have laid down certain general rules to which the exercise of that power must be conformed under penalty of incurring constitutional violation. Commenting on the equal protec-

---

[4] By Act No. 87 of May 13, 1936, the homestead therein created was exempt from attachment and sale to answer for tax debts. However, the property on which the homestead was constituted was not tax exempt. The exemption established by that Act protected only a value of $500 of the property on which the homestead was constituted.

[5] *Rapid Transit Corp.* v. *N. Y.*, 303 U. S. 573, and cases therein cited; *Madden* v. *Kentucky*, 309 U. S. 83.

tion of the laws clause of the former Organic Act, in *San Juan Trading Co.* v. *Sancho*, 114 F. 2d p. 969, the following was said: "...This clause, like the XIV Amendment to the Constitution of the United States, in no way limits the power of the Legislature of Puerto Rico to classify the objects of legislation or the persons affected by it so as to subject different classes to differing rates of taxation. [Citations.] However, such classification must be reasonably related to the object of the legislation and must be based upon some distinction which can rationally and fairly be made the reason for different taxation. ..." When the classification is not arbitrary and rests on a reasonable basis, there is no discrimination because taxes are imposed on one class but not on others, or because different tax rates are established, or because exemptions are granted to some and not to others. *M. J. y S. Cabrero* v. *Sancho Bonet*, 58 P.R.R. 535.[6] *People* v. *Avilés*, 54 P.R.R. 257. "If it appears or may fairly be assumed that it (the classification) is for the purpose of promoting a permissible public aim, it cannot be condemned because one class must pay a tax which another does not," [7] and as long as the classification is not arbitrary, unreasonable, or discriminatory, the legislative action should be upheld. In any event, it is up to the one who attacks the validity of the law to show that it is without any reasonable basis, and therefore purely arbitrary. We have repeatedly stated that when the classification is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be presumed. *Rivera* v. *District Court*, 62 P.R.R. 491; [8] *Buscaglia, Treas.* v. *Tax Court*, 64 P.R.R. 575; *Barceló & Cía.* v. *Buscaglia, Treas.*, 67 P.R.R. 100, and *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 93.

---

[6] This case was reversed as to other particulars in *F. Bacó Soria & Hno.* v. *Tax Court*, 64 P.R.R. 84.

[7] Dissenting opinion now prevailing in *Colgate* v. *Harvey*, 296 U. S. 404, 438, cited in *Barceló & Cía.* v. *Buscaglia, Treas.*, 67 P.R.R. 100, and other decisions of this Court.

[8] Affirmed in *Rivera* v. *Buscaglia*, 146 F. 2d 461.

Appellant herein has not shown that the classification made by the Legislature does not rest on a reasonable basis and that it is essentially arbitrary. He merely contended that the classification denies him the equal protection of the laws and discriminates against him. This is not sufficient to invalidate the law on the ground of unconstitutionality. As stated before, the fact that the tax exemption has been granted to some and not to others does not imply, standing alone, that discrimination has been established. *M. J. y S. Cabrero* v. *Sancho Bonet, supra,* and *People* v. *Avilés, supra.* Possible differences in the tax burden, not shown to be substantial, or which are based on discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition. *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460. Since the decision in the case at bar was based upon a motion for summary judgment and appellant offered no evidence, with the exception of certain judicial records which are irrelevant, the only fact proved is that the statute in question affects him (a) because appellant is the owner of certain property wherein his homestead is constituted, and (b) because, despite the fact that he complies with other legal requirements, his property is not covered by the exemption because the total assessed value of his properties exceeds $2,500, or, in other words, that the property in question is subject to taxation while other properties used for the same purposes are not taxed if the total assessed value of the properties of their owners is less than $2,500; but, in order that his constitutional objection might prosper, he should have proved also that the Legislature exceeded its powers in enacting the statute, *Austin* v. *The Aldermen,* 7 Wall. 694, *Supervisors* v. *Stanley,* 105 U. S. 305; and in order to do so he should have shown, and did not, that the classification does not rest on a reasonable basis and that it is essentially arbitrary or capricious, or that it is not reasonably related to the object of the legislation, or that the purpose or aim of that classification is a hostile and op-

pressive discrimination against him and against other persons who are allegedly in the same position, and not the promotion of a permissible public aim. What has been said would be sufficient to affirm the judgment appealed from. However, can it be held, as did the lower court, that § 291 (a) of the Political Code is constitutional without considering other facts alien to the record? We believe it can.

In order to decide the constitutional question raised by appellant, we need not rest on the presumption of constitutionality which accompanies the statute and which can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes, which appellant has not done, *Madden* v. *Kentucky*, 309 U. S. 83, or on the presumption that at the time of the enactment of the law assailed there existed a conceivable state of facts to sustain the classification, *Rivera* v. *District Court, supra,* and *Buscaglia, Treas.* v. *Tax Court, supra,* for such state of facts has been carefully set forth in the Statement of Motives [9] which prefaces Act No. 27 of 1941, and no one would deny its existence because the facts are of public knowledge.

Pursuant to that Statement of Motives, one of the purposes of the law was to establish guarantees for the conservation of the homestead in favor of those families having limited resources or means. These were the families most affected by the grave housing problem with which the Legislature was concerned. The property on which a person had constituted his homestead was subject to taxation. Due to the low level of salaries and the fact that the prevailing tax rate was very high and constituted a heavy burden on the majority of persons of limited means and who, in most cases, had no other property than the house where they sheltered their families, there were hundreds of families who, according to the statistics of the Department of the Treasury, fell within the category of those who were unable

---

[9] Already literally transcribed early in this opinion.

to pay the taxes levied on the property on which their homesteads were constituted, and as a consequence of the nonpayment of such tax, their homes were attached and sold at public auction. In granting the tax exemption, the Legislature took these facts into consideration and, as to the owners of properties on which their homestead was constituted, it established a class on the basis of the total assessed value of their properties.[10] Thus, it drew a line between those persons included in the class who ran the risk of losing their homes for nonpayment of the taxes and those persons who, because of their financial condition, did not run the same risk. It granted exemption to some and not to others. Its action was not arbitrary, nor did it establish a hostile and oppressive discrimination against those subject to taxation for the reason that their homesteads are not covered by the exemption. This is even more true if we consider the fact that the Legislature extended the homestead protection as far as the resources of the Treasury of Puerto Rico, the normal operation of municipal finances, and the proper conduct of the Insular Government permitted. On the other hand, it is unquestionable that the purpose of the classification was to promote a permissible public aim. There was, therefore, a reasonable basis to warrant the classification. See *Rivera* v. *District Court, supra.*

The case of appellant herein is very near the boundary line drawn by the Legislature. His property would be tax exempt except for a difference of only $170. However, the line had to be drawn at some point and that is a question for legislative decision. As stated by Mr. Justice Stone in *Carmichael* v. *Southern Coal Co.,* 301 U. S. 495, in connection

---

[10] Although the object of the exemption was the property, the fact is that the classification was based on the financial condition of its owner for, as we have seen, not all the properties on which the owners have their homestead constituted are tax exempt. In order that the property be tax exempt, the strictly personal requisite that the total assessed value of the properties of the owner shall not exceed $2,500, must be complied with.

with this dividing line, refuting an attack of invalidity of the Unemployment Compensation Act of Alabama on the ground that it applied to employers having eight or more employees and not to those having seven:

"...It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.

" . . . . .

"...But if for that or any other reason it [the state] may exempt some, whether it should draw the line at one, three, or seven, is peculiarly a question for legislative decision. The decision cannot be said to be arbitrary because it falls in the twilight zone between those members of the class which plainly can and those which plainly cannot expediently be taxed."

The inequality resulting from the selection made by the Legislature, of which appellant complains, infringes no constitutional limitation. A legislature is not bound to tax every member of a class or none. It may make distinction of degree having, as in the case at bar, a rational basis. *Carmichael* v. *Southern Coal & Coke Co., supra Magoun* v. *Illinois Trust & Saving Bank*, 170 U. S. 283; *Bredlone* v. *Suttles*, 302 U. S. 277. A legislative classification may rest on narrow distinctions. *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389; *Atchison T. & S. F. R. Co.* v. *Mathews*, 174 U. S. 96; *Giozza* v. *Tiernan*, 148 U. S. 657.

In order to safeguard the constitutionality of § 291 (a) of the Political Code as it now stands, we are urged by appellant to construe the same, even if it means legislating judicially, in the sense of granting a tax exemption up to $2,500 to all property where the owner has his homestead

constituted, provided the other requirements are met, regardless of whether the total assessed value of his properties is less or greater than that sum. He relies firmly on the decisions of this Court in *F. Febles & Cía* v. *Treasurer*, 50 P.R.R. 742; *J. M. Blanco, Inc.* v. *Treasurer*, 55 P.R.R. 380; *Harvey Bros.* v. *Treasurer*, 56 P.R.R. 251; *García & González* v. *Treasurer*, 56 P.R.R. 627, and *Domenech* v. *Havemeyer*, 49 F. 2d 849.

It is unnecessary, in our opinion, to analyze one by one the facts of these cases. We are not bound by those cases to reach a similar result in the case at bar. It is enough to say that the facts in those cases present a different picture as to time, purposes, and aims of the legislation involved, relation of the classification to the purposes of the legislation and basis of reasonability, as well as the public aim sought by either legislation. The circumstances in those cases constitute no precedent necessarily binding in the decision of appellant's case.

Many years ago the Supreme Court of the United States, discussing the problem of classification in the tax field, stated that it was impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases, and that they must be decided as they arise. *Bells Gap. R. Co.* v. *Pennsylvania*, 134 U. S. 232. In the course of time that Court has laid down a group of four general rules to ascertain whether a law is repugnant to the constitutional clause on the equal protection of the laws.[11] However, as stated in *Rivera* v. *District Court, supra*, "there does not exist, nor can exist, a fixed rule as to what constitutes reasonableness in the classification for taxation purposes." The difference between the instant case and those invoked by appellant is a good illustration. They can not be treated as though the situa-

---

[11] Those rules are quoted in *People* v. *Avilés, supra*, and *Barceló & Cía.* v. *Buscaglia, Treas., supra*.

tions were the same. *Goesaert* v. *Cleary*, 335 U. S. 465.[12] Here the classification rests on a reasonable basis, and we are therefore bound to hold that § 291(a) of the Political Code, as first amended by Act No. 27 of April 12, 1941 and later by Act No. 119 of April 24, 1951, is constitutional and that, consequently, appellant is not entitled to the exemption claimed.

In view of the foregoing reasons, the judgment appealed from will be affirmed.

---

[12] This is one of the most recent cases (1948) upholding the classification despite the fact that the distinction made to warrant the same was very limited. Under the Michigan Laws, bartenders were required to be licensed in all cities having a certain population. No female, unless she were the wife or daughter of the male owner, might be so licensed and could not therefore serve as a barmaid. A violation of the constitutional clause on the equal protection of the laws was alleged. It was held that both the distinction between males and females and that between wives and daughters of bar owners and other women, rested on a rational basis. The distinction among women was predicated on the fact that the vigilance assured through ownership of a bar by a barmaid's husband or father minimizes hazards that may confront a barmaid without such protection.