**BOYT et al.**
v.
**COMMISSIONER OF INTERNAL
REVENUE.**

**BOYT**
v.
**COMMISSIONER OF INTERNAL
REVENUE.**
Nos. 14906, 14907.

United States Court of Appeals
Eighth Circuit.

Feb. 2, 1954.

**840**

Thomas B. Roberts, Des Moines, Iowa, and Joseph H. Buchanan, Ames, Iowa (Joseph I. Brody and Brody, Parker, Miller, Roberts & Thoma, Des Moines, Iowa, on the briefs), for petitioners.

C. Moxley Featherston, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Petitioners in these four companion cases are here on petition for review of an adverse decision of the Tax Court of the United States determining deficiencies in petitioners' federal income tax returns for the years 1942 and 1943. The cases were consolidated for hearing in the Tax Court and on review to this court and will hereafter be referred to as a single case.

The only question presented on this appeal is the correctness of the decision of the Tax Court regarding the taxability of income to certain trusts, executed by petitioners as grantors, wherein petitioners' children received percentage interests in a family partnership composed of petitioners and others. The Tax Court held that the income to the trusts was earned by and taxable to the grantors thereof and adjudged deficiencies for the years in question. 18 T.C. 1057.

The Boyt Harness Company, an Iowa corporation (hereinafter referred to as the Boyt Corporation), was organized in 1933 as successor to a corporation of the same name which had manufactured harness and leather goods in Des Moines, Iowa, since 1901. Stock in the newly-formed corporation was issued in 1934 to J. W. Boyt, A. J. Boyt, Paul A. Boyt, brothers, Barbara Boyt, mother, E. M. Boyt, sister, J. E. Green, cousin, B. B. Quiner, cousin, and P. J. Kurtz, an employee who had worked for the Boyt family since 1901. J. W., A. J., and Paul A. Boyt received and held the stock on behalf of themselves and their respective wives, each of whom had made substantial contributions to the business. In 1940 the Boyt Corporation began bidding on government contracts for the production of war goods, but because of its limited resources was restricted to comparatively small bids. It endeavored to interest Glen C. Herrick in financing large government contracts for the corporation. He refused to do this but proposed the formation of a limited partnership to engage solely in the manufacture of leather equipment for military use. On November 4, 1940, the Boyt Harness Company (hereinafter referred to as the Limited Partnership) was formed by the Boyt Corporation and Herrick to procure contracts with and manufacture products for the United States government.

Under the terms of the limited partnership agreement, it was provided that Herrick, as the limited partner, would contribute $500 as special capital, pro-

cure bidding and performance bonds, and advance the necessary funds for financing the contracts obtained. Any advances so made were to be evidenced by 4% demand notes of the Limited Partnership. The Boyt Corporation, as general partner, agreed to contribute certain tools, equipment, and machinery. It was further agreed that the Limited Partnership would pay the Boyt Corporation the actual cost only of the manufacture of products contracted for, without allowance for the use of the corporation's equipment, machinery, or premises, or for salary to the corporation's officers. After the first year the profits were to be divided three-fourths to the Boyt Corporation and one-fourth to Herrick. The agreement also stated that the books of the Limited Partnership would be maintained under the control of an employee selected by Herrick, and that no disbursements of any kind would be made without his consent.

The Limited Partnership performed under the above agreement, except as modified as hereinafter mentioned, until December, 1944, when the agreement was terminated.

In 1941, the stockholders of the Boyt Corporation began considering the desirability of dissolving the corporation and organizing a partnership in its stead. Before any definite agreement was reached, J. W., A. J., and Paul A. Boyt transferred one-half of their respective shares of stock in the corporation to their respective wives, in consideration of their initial contributions and later services to the corporation. Thereafter the corporation was dissolved and on August 30, 1941, the Boyt Harness Company (hereinafter referred to as the Boyt Partnership) was formed. The interests in the Boyt Partnership were held by the former stockholders of the Boyt Corporation named above and the wives of J. W., A. J., and Paul A. Boyt.

The articles of partnership of the Boyt Partnership set up the percentage interests of the respective partners and provided that all profits and losses would be shared in like proportions. It did not

provide, however, the time for distribution of profits or the action necessary to approve such distribution. The partnership assumed all of the debts, liabilities, and incompleted contracts of the Boyt Corporation existing as of August 30, 1941. The articles further provided that the partnership books should be audited semi-annually.

The Boyt Partnership replaced the Boyt Corporation in the Limited Partnership organized with Herrick to produce military equipment for the government, but continued to manufacture a small amount of civilian goods.

On September 14, 1942, but as of June 1, 1942, petitioners and their respective wives executed seventeen separate declarations of trust granting their respective minor children percentage interests of the grantors' holdings in the Boyt Partnership. Each trust was identical in form except for the parties and interests involved. The interests granted in the various trusts ranged from 1% to 2½%. The grantors named themselves and their respective spouses as trustees of the trusts so declared, with the exception of B. B. Quiner, who named himself as sole trustee.

The trust instrument provided, in part, as follows:

"Declaration of Trust

\* \* \* \* \*

"I, (name) of Des Moines, Iowa, owner of a ( ) percent interest in the Boyt Harness Company, \* \* \*, do hereby acknowledge and declare that as of June 1, 1942, I have established an irrevocable trust for the benefit of my minor (son/daughter) (name), in a ( ) percent sub-partnership (with myself) interest in said partnership taken from my said ( ) percent interest therein, upon the conditions and for the uses and purposes hereinafter set forth.

"The initial trustees of said trust shall be my (wife/husband) and myself. On the death of either of us, the survivor may continue as sole

trustee with the right to appoint, from time to time, such additional trustees as such survivor deems best. Any vacancy in the office of trustees, not otherwise herein provided for, shall be filled by the then trustees, or in default thereof, through appointment by any Judge of the District Court of Polk County, Iowa, on application by or on behalf of the said (beneficiary).

"No trustee, as such, shall participate in the management of said partnership, it being my intention hereby to establish the relation of sub-partnership between myself and said trustees.

"The trustees may hold and accumulate or invest at their sole discretion all or any part of the trust fund and its accumulation; they may freely buy, sell, exchange, lease (for any term), mortgage, pledge, or hypothecate any part or all of said trust fund and its accumulation.

"I direct that the said partnership, * * * shall, on presentation of this Declaration of Trust, segregate the said ( ) percent sub-partnership interest from my ( ) interest in said partnership, and * * * maintain such entries in its records as shall evidence my irrevocable establishment of said sub-partnership trust and the full and complete delivery to said trustees of all my right, title and interest in and to the said ( ) percent subpartnership interest in said partnership to be held by said trustees as my sub-partners * * *.

"The said trustees shall, * * *, pay to or for the use and benefit of the said (beneficiary) such portion of the income from said trust estate as the trustees deem proper, but no such payment shall be made on account of any legal obligation of myself or my (wife/husband) to or for the said (beneficiary) * * *.

"When the said (beneficiary) attains the age of 25 years, the trustees shall, on his written request, pay or distribute to or for his use and benefit * * * one-half of the then trust fund including accumulations, and the remainder of said trust estate * * * on the attainment of the age of 35 years.

"If my said ( ) children predecease me, without issue, the then remaining portion of said trust estate shall revert to me and my said (wife/husband) * * *.

"I reserve the right to purchase at any time the interest of said (beneficiary) * * * at the value of such interest as shown by the last preceding audit of said partnership.

"None of said trustees shall be liable except for intentional wrongdoing. No personal trustee shall be entitled to any compensation for services hereunder except on the written consent of such of my adult children as shall be living * * *.

"The initial trustees shall not be required to give bond for the faithful discharge of their duties hereunder.

"The interest herein provided for the several beneficiaries of this trust shall not be alienable by any such beneficiary * * *."

On June 1, 1942, the partners of the Boyt Partnership and the trustees of the various trusts executed a Notice of Amendment to the articles of partnership, said amendment setting up the percentage share of net income distributable to each partner and each trust subsequent to that date. Capital and drawing accounts were also set up on the partnership books at that time showing the percentage interest and dollar share of each trust in the partnership business.

The Commissioner refused to recognize the validity of the trusts for tax purposes and taxed their allocated shares of net income to the petitioners herein. The Commissioner also refused to recognize the wives of J. W., A. J., and Paul A. Boyt as bona fide partners in the Boyt Partnership enterprise but has not, how-

ever, appealed from an adverse ruling by the Tax Court on this question.

With respect to the taxability of the several trusts, the Tax Court, in its opinion, held, "The trusts contributed nothing to the enterprise and their creation merely provided a means whereby they became passive recipients of shares of income earned by the grantor-partners. Furthermore, the grantors in their individual capacities, aside from also being the trustees, retained complete dominion and control over the corpus of the trusts, that is the assigned percentage interest in partnership assets. We think it clear, under the facts herein, that the grantor-petitioners actually earned the income in question * * *."

■■ Tax questions involving family partnerships have proved a fertile source of litigation in recent years. Because the family partnership may afford an opportunity to spread income among several members of a single economic unit and thereby effect tax savings, while at the same time the ownership and control of the income remains with the actual earner thereof, courts have uniformly held that family partnerships invite special scrutiny to determine whether the association was made in good faith for business reasons. The Supreme Court of the United States, in the case of Commissioner v. Culbertson, 337 U. S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, enunciated the rule to be followed in determining the validity of questioned partnerships. The Court in that case, 337 U.S. at page 742, 69 S.Ct. at page 1214, said:

"The question is * * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a busi-

ness purpose intended to join together in the present conduct of the enterprise."

With the aid of this standard we examine the record in the present case.

It is contended that there was no substantial evidence upon which the Tax Court could hold that petitioners retained complete dominion and control over the corpus of the trusts and that they amounted to nothing more than assignments of petitioners' future earnings. An analysis of the facts attendant upon the creation, execution, and operation of the trusts, together with a consideration of the terms contained in the trust instruments, leads to the conclusion that there was substantial evidence supporting the Tax Court's decision and it must be affirmed on appeal. Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. Our reasons follow.

■ On May 23, 1942, J. W. Boyt wrote a letter to his counsel which reads, in part, as follows:

"We are seriously considering dividing up our interests in the Partnership by giving outright part of our interest to other members of our family, as a gift, in order to keep our income this year, individually, within reasonable tax limits.

"* * *. We presume a trust would have to be formed to take care of the interests of the children.

"We understand this could be done without the recipients of such a gift having any voice in the partnership. Also, that such a procedure would stick and would not jeopardize our present partnership into being construed as an association or corporation."

The letter is indicative of petitioners' intent not to part with control over the partnership assets granted in the trusts. This fact may properly be considered in determining the true nature of the transaction.

■■ Although the trust instruments specifically stated that the grantors were creating irrevocable trusts, these words

are not necessarily conclusive. We think the Tax Court could reasonably find, on a consideration of the whole instrument, that the grantors did not accomplish, for tax purposes, the intended gift. Article I of the instrument provides that the grantor and his/her spouse shall be the original trustees. Article II states that no trustee, as such, shall participate in the management of the Boyt Partnership. Article III grants the trustees sole discretion to hold, invest, buy, sell, mortgage, or pledge any or all of the trust fund and its accumulation. Article VI gives the trustees complete discretion in paying income from the trust to the beneficiary thereof. Article X provides for reversion of the trust estate to the grantor and his/her spouse upon the death of the grantor's children without issue. Article XI reserves to the grantor the right to repurchase the interest granted for the book value thereof as shown by the last preceding audit. Article XII exculpates the trustees for all acts except intentional wrongdoing. Article XVI forbids alienation of the trust estate by the beneficiary thereof. These provisions, through which the grantors retained many of the incidents of ownership over the trust property, were factors for consideration by the Tax Court in determining whether a valid gift was effected.

The trust instrument must also be read in connection with the Boyt Partnership agreement and the Limited Partnership agreement because it is dependent on those agreements in many respects. The articles of partnership of the Boyt Partnership contained no provision for distribution of profits and presumably it would require a majority vote of the partners to distribute profits to themselves and to the trusts. But the Boyt Partnership itself, as general partner in the Limited Partnership, could receive no profits from that enterprise unless Herrick consented to a distribution. Of the total production of the Boyt Harness Company in 1943, approximately 90% involved government contracts under the Limited Partnership agreement and only 10% was devoted to the production of civilian goods by the Boyt Partnership. Mr. Herrick testified, "With reference to the contract of Nov. 4, 1940 (the Limited Partnership agreement), it was the understanding there was to be no withdrawal of any earnings by the limited partnership. I don't know whether it was in writing or not. But there were no withdrawals. As to whether there were to be any beyond necessity for taxes—not as far as I was concerned." Mr. Herrick further testified that at one time he had approximately a million dollars committed to the Limited Partnership. This amount was evidenced by notes of the Limited Partnership and secured by the assets of the Boyt Partnership.

The evidence taken from the record and presented heretofore clearly establishes that the trusts exercised no control or dominion over the property assigned to them or the income accruing therefrom. We agree with the Tax Court that the trusts were merely "passive recipients of shares of income earned by the grantor-partners". The petitioners retained too many of the incidents of ownership to the trust property to shift the tax burden from themselves to the trusts. They stood in relatively the same position in respect to the property after the execution of the declarations of trust as before. This court in Kohl v. Commissioner of Internal Revenue, 8 Cir., 170 F.2d 531, 535; quoting from Economos v. Commissioner, 4 Cir., 167 F.2d 165, held, "A gift of an interest in a family business, whether absolute or in trust, which makes no real change in the economic situation of the group or in the control or management of the business will not reduce the obligations of the donor to account for and pay income tax on the earnings of the enterprise to the same extent as before the gift was made."

Petitioners further contend that the Tax Court erred in holding that the trusts contributed nothing to the Boyt Partnership enterprise. Admittedly nothing was contributed in the way

of services but it is argued that the trusts contributed vital capital to a business in which capital was a material income-producing factor. Petitioners do not contend that the trusts thereby became partners in the business but rather, by the terms of the trust instruments, they became subpartners or joint venturers with their respective grantors.

▮ But whatever the status attributed to the trusts in relation to their grantors, whether a subpartnership or a joint venture, it is now well settled that the term "partnership" as defined in Section 3797(a) (2) of the Internal Revenue Code, 26 U.S.C.A., includes both a subpartnership and a joint venture. Forman v. Commissioner, 9 Cir., 1952, 199 F.2d 881; U. S. v. Atkins, 5 Cir., 1951, 191 F.2d 146; Rupple v. Kuhl, 7 Cir., 1949, 177 F.2d 823. And the same principles for determining the validity of a partnership, as laid down in the Culbertson case, supra, apply in determining the validity of a subpartnership or joint venture. U. S. v. Atkins, supra; Stoffield v. Commissioner, 7 Cir., 1953, 203 F.2d 667. As we have noted, petitioners retained beneficial ownership of the trust res for all practical purposes. Conversely, the trusts contributed nothing to the Boyt Partnership enterprise. This is true notwithstanding a valid subpartnership or joint venture may have been created under the local law of Iowa. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Kohl v. Commissioner of Internal Revenue, supra. The declarations of trust passed nothing more than mere legal title to the trust corpus. The trusts contributed nothing more in return. This was insufficient to establish the trusts as partners, subpartners, or joint venturers in the Boyt Partnership enterprise. See Feldman v. Commissioner of Internal Revenue, 4 Cir., 1950, 186 F.2d 87, 91 and cases cited therein. Petitioners' contention respecting contributions of income-producing capital by the trusts was raised in the Feldman case, supra. The court, after considering the argument, had this to say: "We conclude that the trust's ownership of gift capital is not a contribution sufficient to offset the inferences to be drawn from the failure to contribute original capital or vital managerial services." We think that statement applicable to the present case.

▮ Petitioners urge that the findings of fact made by the Tax Court are insufficient to sustain its decision. Although the findings are not as extensive and detailed as they might have been, they form an adequate basis upon which to rest the decision.

▮ Examination of the record is convincing that the Tax Court did not err in taxing petitioners on the income to the trusts. The trusts were set up in such a manner as to leave the grantors the substantial owners of the trust property and the income therefrom. The tax burden must fall on those who earn the income. Commissioner v. Culbertson, supra; Lucas v. Earl, supra; Helvering v. Clifford, supra; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779. In the present case it was the petitioners.

Affirmed.