PEDRO JUAN SERRALLÉS GALIANO, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* 11811. *Resuelto:* 24 de noviembre de 1961.

*Víctor Gutierrez Franqui, Luis F. Sánchez Vilella, C. Morales, Jr., Vicente Zayas Pizarro* y *Benjamín Ortiz,* abogados del recurrente; *José Trías Monje, Secretario de Justicia* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del recurrido y *James R. Beverley, R. Castro Fernández,* y *Francisco Castro Amy,* ccmo amici curiae.

Sala integrada por el Juez Presidente, Señor Negrón Fernández, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Con el propósito de poder llevar a cabo el programa de gobierno anunciado por la nueva administración que se hizo cargo de los destinos del país a raíz de las elecciones generales de 1940 y para detener la inflación que se comenzaba a sentir con motivo del inicio de las hostilidades en Europa en 1939, la Asamblea Legislativa de Puerto Rico inició una política fiscal dirigida a obtener mayores ingresos para el erario público. En la esfera de la contribución sobre ingresos esta política se materializó mediante legislación aumentando los tipos, reduciendo los créditos y las deducciones al ingreso bruto que se permitían, eliminando puertas de escape e inaugurando una administración más intensa y vigorosa de la

ley misma.(¹) Tres medidas en particular cobran singular importancia para la determinación final del presente litigio.

Mediante la Ley núm. 31 de 12 de abril de 1941 (Leyes (1), pág. 479) se enmendó la sección 4(a) de forma que "el término 'beneficio' significará cualquier participación o derecho a participación en una sociedad que en los 'beneficios' o utilidades de cualquier sociedad correspondiere a sus socios o partícipes en cada año contributivo". Antes de esa fecha la parte correspondiente de dicha sección al definir beneficios leía "cualquier distribución hecha por una sociedad a sus socios y partícipes", y había sido interpretada en *Behn* v. *Domenech, Tesorero*, 49 D.P.R. 808 (1936) como que no incluia beneficios determinados por una sociedad que no habían sido distribuidos a los socios. El alcance de la enmienda fue tributar a los socios cualquier beneficio declarado por la sociedad que correspondiera al socio, aún cuando el mismo no hubiese sido distribuido. *Tesorero* v. *Tribl. Contribuciones* y *Ballester*, 69 D.P.R. 750 (1949), confirmado en 181 F.2d 823 (1950); 70 D.P.R. 386 (1949); *Descartes* v. *Tribl. Contribuciones y Sucn. Cautiño*, 71 D.P.R. 248 (1950). A esta enmienda se le dio efecto retroactivo a 1 de enero de 1940. También se enmendó la sección 24(b) para exigir, con efecto retroactivo a la fecha indicada, la rendición de una planilla conjunta por los cónyuges, *Ballester* v. *Tribunal de Apelaciones*, 61 D.P.R. 474 (1943). Hasta este momento se permitía una elección sobre la presentación de planillas separadas o una conjunta. Véase, *Casals* v. *Sancho Bonet*, 53 D.P.R. 640 (1948).

La Ley Núm. 23 de 21 de noviembre de 1941 (Leyes (2), pág. 73) enmendó la sección 13(a) relativa a la contribución adicional y aumentó en forma notable los tipos de la impo-

---

(¹) Una situación similar ocurrió en Estados Unidos en relación con las sociedades de familia (family partnerships), que hicieron su aparición como una medida del contribuyente para distribuir su responsabilidad contributiva. Dierberger, *Income Splitting and Family Partnerships*, 30 Taxes 515 (1952).

sición.([2]) La fecha de vigencia de esta ley se fijó retroactivamente al día 1 de enero de 1941.([3])

La sociedad civil agrícola e industrial "Sucesión J. Serrallés" se constituyó en el año 1914 mediante la escritura número 33 de 11 de abril otorgada ante el Notario don Francisco Parra Capó. Aunque se trataba de una sociedad regular colectiva, en el pacto social se convino que la misma

---

([2]) A los fines de que pueda tenerse una idea completa del impacto en el importe de la contribución a pagarse con motivo de la enmienda contenida en la Ley 23 de 1941, presentamos el siguiente cuadro comparativo:

| Ingreso Neto | Contribución Adicional Hasta Dic. 31, 1940 (Ley núm. 2 de mayo 25, 1939) | Contribución Adicional Desde Enero 1, 1941 (Ley 23 de Nov. 11, 1941) |
|---|---|---|
| hasta $5,000 | ——— | |
| hasta 7,000 | ——— | 3% sobre $5,000 |
| $7,000 a $10,000 | 3% sobre exceso de $7,000 | 5% sobre 7,000 |
| 10,000 a 14,000 | 5% sobre exceso de 10,000 | 7% sobre 10,000 |
| 14,000 a 16,000 | 7% sobre exceso de 14,000 | 10% sobre 14,000 |
| 16,000 a 18,000 | 9% sobre exceso de 16,000 | 13% sobre 16,000 |
| 18,000 a 20,000 | 10% sobre exceso de 18,000 | 17% sobre 18,000 |
| 20,000 a 22,000 | 11% sobre exceso de 20,000 | 21% sobre 20,000 |
| 22,000 a 24,000 | 12% sobre exceso de 22,000 | 25% sobre 22,000 |
| 24,000 a 26,000 | 13% sobre exceso de 24,000 | 29% sobre 24,000 |
| 26,000 a 28,000 | 14% sobre exceso de 26,000 | 32% sobre 26,000 |
| 28,000 a 30,000 | 15% sobre exceso de 28,000 | 35% sobre 28,000 |
| 30,000 a 34,000 | 16½% ” exceso de 30,000 | 38% sobre 30,000 |
| 34,000 a 36,000 | 17½% ” exceso de 34,000 | 41% sobre 34,000 |
| 36,000 a 38,000 | 18½% ” exceso de 36,000 | 44% sobre 36,000 |
| 38,000 a 42,000 | 20% sobre exceso de 38,000 | 47% sobre 38,000 |
| 42,000 a 44,000 | 21% sobre exceso de 42,000 | 50% sobre 42,000 |
| 44,000 a 46,000 | 22% sobre exceso de 44,000 | 53% sobre 44,000 |
| 46,000 a 52,000 | 24% sobre exceso de 46,000 | 54% sobre 46,000 |
| 52,000 a 58,000 | 26% sobre exceso de 52,000 | 55% sobre 52,000 |
| 58,000 a 64,000 | 28% sobre exceso de 58,000 | 56% sobre 58,000 |
| 64,000 a 70,000 | 30% sobre exceso de 64,000 | 57% sobre 64,000 |
| 70,000 a 76,000 | 32% sobre exceso de 70,000 | 58% sobre 70,000 |
| 76,000 a 82,000 | 34% sobre exceso de 76,000 | 59% sobre 76,000 |
| 82,000 a 88,000 | 36% sobre exceso de 82,000 | 60% sobre 82,000 |
| 88,000 a 94,000 | 38% sobre exceso de 88,000 | 61% sobre 88,000 |
| En exceso de 94,000 | 40% | 62% |

([3]) La constitucionalidad del aumento retroactivo en los tipos contributivos fue sostenida en *Ballester* v. *Tribunal de Contribuciones*, 61 D.P.R. 474 (1943), confirmado en 142 F.2d 11 (1944), certiorari denegado en 323 U.S. 723 (1944). Cf., en cuanto a retroactividad de contribución sobre herencia, *González* v. *Tesorero*, 76 D.P.R. 263 (1954).

sería administrada por una junta directiva compuesta de no más de tres socios o apoderados de socios que serían elegidos en la forma que se disponía en la cláusula vigésima y quienes tendrían las facultades y atribuciones que se especificaban. Andando el tiempo la entidad sufrió cambios y alteraciones, tanto en cuanto a sus miembros—por efecto de cesiones de participaciones por venta y donación y por muerte de socios originales—como en su estructura administrativa. Por ello, mediante la escritura número 15 de 21 de agosto de 1940 ante el Notario don Vicente Zayas Pizarro, se modificó el régimen social para avenirlo a la situación que entonces prevalecía.

En esa fecha todos los socios que con el carácter de colectivos integraban la sociedad procedían de las tres ramas de la familia Serrallés, que desde el pasado siglo se había dedicado a idéntica empresa: los Serrallés-Sánchez, cuyo tronco era don Juan Eugenio Serrallés Pérez; los Wirshing-Serrallés, cuyo tronco era doña Julia Serrallés Pérez viuda de Wirshing; y los Serrallés-Tristani, cuyo tronco era y es actualmente don Pedro Juan Serrallés Galiano, el recurrente en este litigio. Entre otras cosas, se consagró un derecho de preferencia a favor de los socios en caso de venta o cesión de la participación correspondiente por cualquiera de sus integrantes, así como para el caso de permuta, hipoteca o cualquier otra forma de enajenación; se dispuso que cualquier tercero que pudiera ingresar en la sociedad al adquirir la participación de uno de los socios administradores no tendría derecho a asumir el carácter de socio gestor; se designaron tres socios gestores, en representación de cada una de las tres ramas de la familia Serrallés, y aunque se permitió a éstos delegar el ejercicio de las funciones de administración, se limitó la autorización a otros miembros de la misma rama; se autorizó al recurrente don Pedro Juan Serrallés Galiano a delegar en su esposa doña Rosario Tristani y en sus hijos Pedro J., Rosario June y Juan Serrallés Tristani, "pero te-

niendo en cuenta que estos tres son menores de edad, tal designación no tendrá efecto hasta tanto cualquiera de ellos haya obtenido la mayoría de edad, ya por haber cumplido los veinte y un años, o ya por emancipación en la forma legal correspondiente"; (4) se le reconoció a 31 de diciembre de 1939 al señor Serrallés Galiano una participación en el capital social ascendente a $1,035,313.16 del total de $3,500,000, esto es, un 29.58037604 por ciento, e idéntica participación en la reserva acumulada—beneficios por distribuir— de $947,711.85, o sea, una cantidad adicional de $280,336.73; se dispuso que cada uno de los socios tendría cuatro cuentas en los libros de contabilidad: 1—una cuenta capital, a la cual se trasladaría la participación en la sociedad; 2—una cuenta particular, en la cual se asentarían "los créditos o débitos procedentes de los beneficios"; 3—una cuenta de gastos, o sea, la pertinente a los gastos particulares, cuyo saldo se trasladaría a la cuenta particular al practicarse el balance general; y, 4—cualquier otra cuenta que se determinare por los socios gestores; y se dispuso que los beneficios determinados en cada balance general se acreditarían al fondo de reservas, a menos que se acordara su distribución total o parcial por socios en no menos del sesenta por ciento de participación en la sociedad.

En 26 de diciembre de 1941 los esposos Serrallés-Tristani otorgaron la escritura número 44 ante el Notario don Vicente Zayas Pizarro mediante la cual donaron irrevocablemente a sus tres hijos Pedro Juan, Rosario June y Juan, la suma de $300,000 del capital social de la sociedad "Sucn. J. Serrallés",

---

(⁴) En el ejercicio de la facultad de delegación que se le concede en el contrato social, don Pedro Juan Serrallés designó como "delegado" a su hijo Pedro Juan Serrallés Tristani, y al efecto se otorgó la escritura número 3 de 12 de abril de 1950 ante el Notario don Vicente Zayas Pizarro. Para esa fecha el joven Serrallés ya contaba 26 años de edad. La prueba revela que el socio administrador delegante se encontraba residiendo en la ciudad de Miami, a cargo de los negocios e inversiones de la familia Serrallés en el estado de Florida, y que disponía de escaso tiempo para dedicarlo a las gestiones de la sociedad Sucn. J. Serrallés.

o sea, en proporción de $100,000 para cada uno. Se consignó que el propósito de la donación era asegurar el "status" económico de los donatarios, quienes a la sazón contaban diecisiete, catorce y diez años de edad, eran estudiantes y vivían en compañía de y bajo la patria potestad del recurrente. En la donación se incluyó cualquier suma que por concepto de beneficios pudiera corresponder al importe del capital donado con motivo de las transacciones de la sociedad en el año 1941, y cuyo balance estaba próximo a efectuarse, (⁵) pero se aclaró que ello no convertía a los donatarios en socios gestores o administradores de la sociedad. En la escritura de referencia los padres donantes hicieron renuncia a favor de sus hijos del usufructo legal que les correspondía, aclarando, sin embargo, que esta renuncia no afectaba sus relaciones—obligaciones, deberes y derechos—con los menores, tales como la de administrar sus bienes y educarlos y sostenerlos, para lo cual se reservaban bienes suficientes. La anterior Corte de Distrito de Ponce designó a la abuela materna de los menores como defensora judicial, y ésta concurrió en la escritura correspondiente a aceptar la donación según exigido por las disposiciones legales aplicables.

Dieciocho meses después de efectuada la donación, la Corte de Distrito de Ponce autorizó a que de los dineros de los menores se facilitara en préstamo al señor Serrallés Galiano la suma de $37,200. La petición presentada por el padre de éstos alegaba que esta transacción era beneficiosa y conveniente porque en esta forma el capital de los hijos, que permanecía ocioso, sin producir rentas o utilidades, devengaría un interés de dos por ciento anual, igual al que se percibiría en caso de haberse depositado en cuenta de ahorros en una institución bancaria, y además, porque el importe del préstamo se destinaría a cubrir atenciones personales y familiares,

_____

(⁵) A cada uno de los donatarios se le abonó cinco días después la cantidad de $5,714.29 por su participación en los beneficios del año corriente, o sea, un total de $17,142.87.

incluyendo gastos de sostenimiento y educación de los tres menores.

Durante los tres años en controversia el recurrente satisfizo personalmente el importe de la contribución sobre ingresos correspondiente a sus tres hijos. Las sumas pagadas por ese concepto le fueron reconocidas en la cuenta de los menores en los libros de la sociedad. No hay constancia expresa de la aceptación de los menores como socios de la sociedad, pero ello se deduce de todas las circunstancias concurrentes, ([6]) especialmente de la exigencia de que los menores firmaran, conjuntamente con los otros socios, un contrato de hipoteca a favor de la firma John Hancock Life Insurance Co. Cf. *Perales* v. *Sampayo,* 36 D.P.R. 897 (1927). La parte demandante trató de establecer que era una práctica corriente en la familia Serrallés efectuar donaciones a favor de los descendientes. El tribunal de instancia no formuló determinación alguna sobre el particular aparentemente por el hecho de que los ejemplos mencionados son, en cuanto a sus circunstancias, claramente distintos de la situación que consideramos, ya que no se trataba de donaciones gratuitas a favor de menores de edad (donación onerosa hecha por don Pedro Juan Serrallés Pérez a favor de su hijo don Pedro Juan Serrallés Galiano mediante escritura número 116 de 30 de agosto de 1921 ante el Notario don Francisco Parra), y además, constituia una distribución anticipada de herencia que comprendía toda la participación del donante en la sociedad([7]) (donación hecha por doña Mercedes Pérez vda.

([6]) Estamos convencidos de que las cláusulas sobre ingreso de nuevos socios y de preferencia de adquisición a que hemos hecho referencia, se intentaron más bien para detener el posible ingreso de personas extrañas, o sea, no relacionadas por vínculos de consanguinidad o afinidad con las tres ramas de la familia Serrallés. La interesante historia de esta sociedad familiar así lo revela.

([7]) Para la fecha en que se efectuaron tales donaciones, no se imponía tributo alguno por la transmisión. No fue hasta la aprobación de la Ley Núm. 303 de 12 de abril de 1946 (Leyes, pág. 783, 13 L.P.R.A. secs. 881 et seq.) que se impuso contribución en relación con la donación *inter vivos.*

de Serrallés mediante la escritura número 34 de 11 de abril de 1914 ante el Notario don Francisco Parra a favor de sus cinco hijos y su nieto don Pedro J. Serrallés Galiano).

El Secretario de Hacienda incluyó los beneficios y utilidades de la sociedad Sucesión J. Serrallés acreditados a los menores Serrallés Tristani como ingresos percibidos por el recurrente don Pedro Juan Serrallés Galiano, y en su consecuencia determinó deficiencias al revisar las declaraciones de ingresos archivadas por éste para los años 1941, 1942 y 1943.

El tribunal a quo, después de considerar y analizar la prueba, formuló una determinación de hecho al efecto de que la donación efectuada por el recurrente "no tuvo otra motivación ni otro fin y propósito que no fueran las consecuencias contributivas de la misma, y el evitarse al demandante, y el ahorrarse, el pago de mayor contribución adicional mediante el plan de redistribuir o reasignar ingreso dentro de su unidad económica familiar". Por esa razón dejó expresamente sin resolver, por ser ello innecesario, sobre la defensa planteada por el Secretario de Hacienda al efecto de que como el usufructo legal de los padres es irrenunciable, de todas formas los intereses y utilidades producidos por los bienes donados eran atribuibles al recurrente como ingreso sujeto a tributación.

Independientemente de si el usufructo legal de los padres sobre los bienes de los hijos es o no renunciable—cuestión que dejaremos sin resolver hasta una ocasión más propicia—, no podemos olvidar que la controversia que se plantea en el presente recurso es esencialmente una de Derecho fiscal para cuya solución debemos recurrir en primer término a las disposiciones aplicables y a los principios fundamentales que rigen la materia. *De la Haba* v. *Tribunal*, 76 D.P.R. 923 (1954); *Albanese* v. *Secretario de Hacienda*, 76 D.P.R. 324

*Freeman* v. *Secretario de Hacienda*, 82 D.P.R. 307 (1961); *Estévez* v. *Registrador*, 67 D.P.R. 367 (1947); *Casalduc* v. *Registrador*, 67 D.P.R. 619 (1947).

(1954) ; *Semanaz* v. *Secretario de Hacienda*, 76 D.P.R. 411 (1954) ; *González* v. *Descartes*, 75 D.P.R. 920 (1953). Por tanto, examinaremos algunos principios establecidos en el Derecho contributivo que están estrechamente ligados con los planteamientos hechos.

 Las transacciones entre miembros de una familia deben ser escrutadas cuidadosamente, *Spiesman* v. *Commissioner*, 260 F.2d 940 (C.A. 9, 1958) ; *Commissioner of Internal Revenue* v. *Reece*, 233 F.2d 30 (C.A. 1, 1956) ; *Nelson* v. *Commissioner of Internal Revenue*, 184 F.2d 649 (C.A. 8, 1950), especialmente cuando el efecto práctico de las mismas es distribuir la responsabilidad contributiva entre varias personas, *Boyt* v. *Commissioner of Internal Revenue*, 209 F.2d 839 (C.A. 8, 1954) ; *Visintainer* v. *Commissioner of Internal Revenue*, 187 F.2d 519 (C.A. 10, 1951) ; *Batman* v. *Commissioner of Internal Revenue*, 189 F.2d 107 (C.A. 5, 1951) ; *Yiannias* v. *Commissioner of Internal Revenue*, 180 F.2d 115 (C.A. 8, 1950). A este respecto es conveniente considerar el origen de la transacción, la relación existente entre las partes, el efecto inmediato en la responsabilidad contributiva individual de éstos, la disposición que se hace del ingreso obtenido y cualquier otro factor que tienda a arrojar luz sobre la verdadera intención y los motivos reales que informan la transacción. *Highland Hills Swimming Club Inc.* v. *Wiseman*, 272 F.2d 176 (CA 10, 1959) ; *Finley* v. *Commissioner of Internal Revenue*, 255 F.2d 128 (C.A. 10, 1958) ; cf. *Lucas* v. *Earl*, 281 U.S. 111 (1930) que contiene la célebre frase del Juez Holmes de que no se favorecerá ninguna interpretación mediante la cual "se atribuyan los frutos a un árbol distinto a aquél que los produjo"; *Burnett* v. *Leinnienger*, 285 U.S. 136 (1932) ; *Helvering* v. *Eubank*, 311 U.S. 122 (1940).

 Aun aceptando que el contribuyente puede intentar lícitamente limitar su responsabilidad contributiva utilizando para ello los medios que la ley le permite, *Commissioner* v. *Phillips*, 275 F.2d 33 (CA 4, 1960), consideradas las circuns-

tancias específicas de la situación que está ante nos, es innegable que la conclusión del tribunal de instancia de que la donación responde al propósito de evitar el nuevo rigor contributivo que se inicia con la legislación de 1941 no está desprovista de fundamento. Si algo resulta palmario es que el único efecto práctico de la donación efectuada es desviar de la planilla del padre a las de sus hijos menores la declaración de los ingresos que en forma de beneficios en una sociedad produce el capital donado. En forma alguna se afecta el control de la gestión de negocios de la sociedad; en forma alguna intervienen los donatarios en la gestión social, y, prácticamente, en forma alguna perciben los beneficios del capital, pues como hemos visto, éstos se les acreditan en una cuenta personal abierta en los libros de la sociedad, y sólo sirvieron el propósito de ser el objeto de un préstamo al mismo padre bajo condiciones de patente conveniencia para el prestatario. Significativo también es que el ánimo de generosidad de los padres donantes se manifiesta apenas han transcurrido 35 días de la aprobación de la medida que aumentaba los tipos de tributación, y que expresamente—al igual que la ley mencionada—se le da efecto retroactivo al 1 de enero de 1941 para incluir en los mismos cualquier beneficio obtenido durante dicho año. Todas estas circunstancias sostienen ampliamente la posición asumida por el tribunal a quo. Debemos, por tanto, respetarla. *Spiesman* v. *Commissioner*, 260 F.2d 940 (CA 9, 1958) ; *Feldman* v. *Commissioner*, 186 F.2d 87 (CA 4, 1950). Como ocurre posiblemente con toda transacción de esta índole, pueden señalarse algunos factores que indican una solución contraria, pero apreciados los hechos en conjunto, la balanza se inclina, a nuestro juicio, a sostener que aquí el móvil determinante fue el de aliviar la carga contributiva mediante la distribución entre varias personas del ingreso propiamente atribuible a una sola unidad económica. Procede, pues, para fines de la contribución sobre ingresos, descartar la ficción creada e ignorar un refina-

miento de título que podrá tener consecuencias merecedoras de reconocimiento en otros campos del Derecho, pero no para los fines indicados. Cf. *Finley* v. *Commissioner*, 255 F.2d 128 (CA 10, 1958).

■ El artículo 225 del Reglamento núm. 1([8]) invocado por el recurrente no tiene el efecto que éste le atribuye de permitir en el presente caso la declaración por el hijo en una planilla separada de los ingresos por concepto de beneficios en la sociedad. *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16, 34 (1957), en donde se declaró inválida la segunda oración de dicho artículo.

En Estados Unidos el problema de la atribución de los ingresos en sociedades de familia ha sido objeto de variada interpretación.([9]) Como resultado de las opiniones de la Corte Suprema federal en *Commissioner* v. *Tower*, 327 U.S. 280 (1946) y *Lusthaus* v. *Commissioner*, 327 U.S. 293 (1946) el Tribunal de Contribuciones y la mayoría de las cortes de distrito requerían que, a los fines de reconocer la distribución de los beneficios de sociedades entre distintos miembros de la familia—marido y mujer y padres e hijos—, se estable-ciera una aportación al capital original de la sociedad, y/o

---

([8]) Dicho artículo dispone que:

"Si un menor ha sido emancipado por su padre, el producto de su trabajo constituye su propio ingreso y no es necesario incluir tales en-tradas, independientemente de la cantidad en la planilla del padre. Si la totalidad del ingreso neto de un menor proveniente de cualesquiera bienes que posea, y de cualquier fondo depositado en fideicomiso para él con un fiduciario o tutor, y del producto de su trabajo en caso de habérsele eman-cipado, asciende por lo menos a $1,000, o su ingreso bruto a $5,000 por lo menos, bien él o su tutor, y otra persona encargada de su persona o bienes para él deberá radicar una planilla como en el caso de cualquier otro individuo. Véase el art. 231. En ausencia de prueba en contrario, se presumirá que un padre tiene el derecho legal al producto del trabajo del menor y debe incluirlo en su planilla."

([9]) La Ley de Contribución sobre Ingresos de 1954 tomó como modelo la federal de 1939, según enmendada, pero omitió las disposiciones relativas a las sociedades de familia (*family partnerships*). Debe recordarse además que en Estados Unidos la sociedad no está sujeta al pago de la contribución y que solamente tributa el ingreso que recibe el socio de los beneficios que obtiene por su capital o industria en la sociedad.

una contribución sustancial a la gestión o administración de ésta, y/o la prestación de "servicios de importancia" (*vital services*) por la esposa o los hijos. Una progenie de más de doscientos casos siguieron a las opiniones citadas, y finalmente, para establecer la norma definitiva, la Corte Suprema consideró nuevamente la cuestión en *Commissioner* v. *Culbertson*, 337 U.S. 733 (1949) e indicó que se había incurrido en un error de énfasis en la interpretación de sus dos anteriores opiniones y que el criterio aplicable era determinar si las partes de buena fe y con el propósito genuino de dedicarse a una gestión de negocios aunaban capital e industria para la prosecución de una empresa en sociedad. Este criterio— fundamentalmente subjetivo—requería, un examen de las circunstancias de cada situación en particular.([10]) Finalmente en 1951 se incorporó una disposición expresa a la ley federal y a la definición de socio se le adicionó una oración al efecto de que se reconocerá como tal—para propósitos contributivos— a una persona en una sociedad en la cual el uso de capital es un elemento importante para la producción de los ingresos, háyase o no adquirido este capital por compra o donación de cualquier otra persona. Además, en el Suplemento F relativo a las sociedades se adicionó la sección 191 que sustancialmente admite que se tributará la participación en los beneficios que corresponda a un socio por su aportación de capital siempre que se atribuya una compensación razonable por los servicios prestados por el donante en la gestión administrativa y la parte proporcional de estos beneficios no excedan de la relación que guarda el capital aportado con la totalidad del capital social. En términos generales, véanse, *Stanback* v. *C.I.R.*, 271 F.2d 514 (CA 4, 1959); *Poggetto* v. *United States*, 193 F. Supp. 688 (Cal. 1961); Mertens, *Law of Federal Income Taxation*, vol. 6, secs. 35.08 a 35.18;

---

([10]) Notas, Landman, *Family Partnerships and the Reality Test*, 28 Taxes 551 (1950). 17 U. Ch. L. Rev. 503 (1950); 25 N.Y. U. L. Rev. 379 (1950); 28 N. C. L. Rev. 238 (1950); 35 Iowa L. Rev. 98 (1949); 44 Ill. L. Rev. 725 (1949); 98 U. of Pa. L. Rev. 143 (1949).

*Family Partnership and the Revenue Act of 1951*, 61 Yale L. J. 541 (1952).

Finalmente deseamos llamar la atención de que la conclusión a que hemos arribado se refiere a años contributivos anteriores a 1954. No es, por tanto, necesario que consideremos las disposiciones de la vigente ley. También nos hemos abstenido deliberadamente de referirnos a situaciones en que hay envuelto un fideicomiso.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 28 de octubre de 1954.*